**Affirmed, in Part; Reversed and Rendered, in Part; Reversed and Remanded, in Part; and Opinion filed February 5, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00084-CV

---

### KEN BIGHAM AND TRACY HOLLISTER,
**Appellants/Cross-Appellees**

### V.

### SOUTHEAST TEXAS ENVIRONMENTAL, LLC,
**Appellee/Cross-Appellant**

---

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2007-55020**

---

## O P I N I O N

Appellant/cross-appellee, Ken Bigham, was granted power of attorney to manage environmental-contamination litigation filed on behalf of appellee/cross-appellant, Southeast Texas Environmental, LLC ("STE"), against third parties, in exchange for Bigham receiving a percentage of the proceeds. Appellant/cross-appellee, Tracy Hollister, was an owner of STE and also designated to receive a

percentage of the proceeds pursuant to the power-of-attorney agreement, although not a signatory thereto. When the parties' relationship eventually deteriorated, STE sued Bigham and Hollister (hereinafter collectively "appellants"), claiming, inter alia, they breached fiduciary duties to STE by essentially sabotaging the contamination litigation. Pursuant to the jury's verdict in the present case, the trial court rendered judgment against appellants for actual and exemplary damages, but refused to order disgorgement of the proceeds they had already received.

On appeal, appellants seek reversal of the damages award. STE has filed a cross-appeal, advancing grounds for remand if we do not uphold the award and challenging the trial court's refusal to order disgorgement. We reverse the portion of the judgment awarding damages to STE and render judgment that STE take nothing on its claim for damages. However, we also reverse the trial court's refusal to order disgorgement and remand for further proceedings on that request. We affirm the remainder of the judgment.

## I. BACKGROUND

### A. Formation of the Parties' Relationship

A chemical waste facility on Galveston Bay, known as "the Malone site," began operating in the 1960s. Over the decades, numerous companies deposited hazardous waste at the site, and it was continually cited for permit violations. The State of Texas put the site into involuntary bankruptcy in the early 1990s.

A businessperson named Jeffrey Pitsenbarger ("Jeff") wanted to buy the Malone site out of bankruptcy and use it as a location for converting hazardous waste into various products. Jeff formed STE for that purpose. At that time, Jeff owned 30% of STE, Hollister owned 20%, and the remainder was owned by two persons who are not involved in this case. Jeff wanted Hollister's participation

2

because he had expertise in hazardous-waste disposal, which Jeff lacked, and Hollister had managed the site for some period and brought it into compliance.

Only a month after the purchase (which was completed in 1999), the Environmental Protection Agency ("EPA") unexpectedly declared the site a Superfund site, which removed STE's authority and forced it, as current owner, to clean up the contamination, at great expense. However, STE, as innocent landowner, could seek contribution for those costs from the companies who deposited the waste. Toward that goal, Hollister introduced Jeff to Bigham, with whom Hollister had previously owned a hazardous-waste storage and disposal company. It was represented to Jeff that Bigham possessed expertise in managing environmental litigation.

The focus became suing the companies who deposited the waste. STE contracted with Bigham, who was not an attorney, to manage the "Malone litigation." Specifically, Bigham and Jeff, individually and on behalf of STE, executed a document entitled, "Power of Attorney and Agreement Concerning Malone Litigation" ("the POA"), dated February 5, 2003. The POA gave Bigham,

> full power of attorney, including the power to hire attorneys, to prosecute this litigation against any and all defendants who might be joined as parties in the Malone litigation. In connection with this power of attorney, Mr. Bigham has the full authority to direct the preparation and filing of all legal instruments, pleadings, drafts, authorizations and papers as shall be reasonably necessary to prosecute this litigation including the power to negotiate and act on behalf of above named parties in concluding this litigation.

In return, the POA provided that Bigham would receive a percentage of the litigation proceeds. Although Hollister was not a signatory to the POA, he was also designated to receive a small percentage of the proceeds because he was an owner of STE and key witness in the Malone litigation. STE was not designated to

3

receive any proceeds. Instead, because Jeff's father, Roger Pitsenbarger ("Roger"), financed the purchase of the property, clean-up costs, and the Malone litigation, he was made a party to the POA and assigned a share of the proceeds. The POA set forth that net proceeds would be divided as follows:

> Until Roger receives a total of $7 million: Roger: 40%; Bigham: 26.5%; Jeff: 26.5 %; Hollister: 7%.

> Once Roger receives a total of $7 million: Bigham: 46.5%; Jeff: 46.5 %; Hollister: 7%.

In the meantime, to repay the debt to Roger, STE had transferred the property to Regor Properties LLC ("Regor"), a company formed by Roger as a subsidiary of Kordel, Inc. ("Kordel"), another company owned by Roger. Thus, Regor and Kordel were also parties to the POA. Roger died while the Malone litigation was pending. His interests in Kordel (and thus Regor) passed to his wife, Elsie Pitsenbarger ("Elsie"), and were ultimately placed in a trust for her.

Partners Mike Martin and Frank Mitchell were retained as the attorneys to prosecute the Malone litigation, pursuant to a separate contingency-fee agreement. The attorneys filed the litigation on STE's behalf in Galveston County.[1] The litigation was prosecuted from 2003 through 2007. In 2007, STE settled with various defendants considered "de minimis" contributors to the site. The trial against the remaining defendants, considered major contributors, was set for November 5, 2007.

## B. Deterioration of the Parties' Relationship

As the de minimis settlements were consummated and the remaining trial date approached, the relationship between the parties to the present case

---

[1] Regor was originally a plaintiff in that litigation but was dismissed for lack of standing because the only available remedy was recovery of clean-up costs, which claim belonged to STE, as owner when the property was declared a Superfund site.

4

deteriorated. Jeff came to believe that Bigham was not actively managing the litigation and was placing his own interests above those of STE. In particular, beginning in April 2007,[2] Bigham insisted the property should be conveyed to the Malone defendants as part of any future settlement of that litigation—a proposition that Jeff strongly opposed. Then, according to Jeff and Martin, in July, Bigham made verbal threats to inform the Malone defendants that another company partially owned by Jeff had illegally deposited waste at the property after it was declared a Superfund site. Such revelation would undisputedly destroy STE's status as innocent landowner and undermine its position in the Malone litigation and could result in the EPA holding STE responsible for clean-up costs.[3] STE alleges Bigham made these threats to force STE to immediately settle the Malone litigation under Bigham's proposed terms so that he could receive his percentage because he was having financial difficulties.

Meanwhile, Martin and Mitchell began to have differences that would ultimately result in dissolution of their partnership. During July and August, Bigham, while expressing concerns about the representation if the partnership dissolved, insisted that Martin confirm Bigham had complete control of the Malone litigation in the event he and Jeff disagreed about any issues. This request concerned Martin because he believed (1) his obligation was to all parties to his contingency-fee agreement (which included Bigham, Jeff, and STE), (2) Jeff must approve any settlements, and (3) Bigham's authority under the POA to manage the litigation was a role belonging to Martin.

---

[2] All future references to dates in this section are to 2007.

[3] Jeff's subsequent investigation revealed the substance was a harmless food-grade product, but once the site was designated a Superfund site, any dumping was prohibited.

5

On August 28, Martin and Mitchell dissolved their partnership. Bigham chose Mitchell to continue representing STE and signed a new contingency-fee contract with him. Jeff was upset about this action because he thought Martin was much more familiar with the Malone litigation. The next day, Martin declared a conflict of interest regarding Bigham's interest in the litigation based on Martin's concerns described above and the disputes between Bigham and Jeff on how to handle the litigation.

On the same day, Jeff, individually and on behalf of STE, and Elsie's trustee, on behalf of Regor and Kordel, revoked the POA because of Jeff's view that Bigham was placing his own interests above those of STE and Bigham's choice of Mitchell to continue as counsel. Jeff then retained two other attorneys to oversee the Malone litigation, and they reinstated Martin. Mitchell and Martin also agreed to set aside their differences in order to prosecute the Malone litigation to an optimal result.

At that point, some settlement funds in the Malone litigation had been distributed pursuant to the POA, but $450,000 in de minimis settlement funds had not been received, and trial against the major contributors was two months away. Thus, the parties to the present case became involved in a dispute over appellants' rights under the POA. STE maintained that the POA had been properly revoked. Appellants insisted that they were entitled to a percentage of any proceeds, Bigham still had sole right to control the Malone litigation, and that STE accept a settlement offer from the major contributors for $1 million—an amount that STE considered inadequate. STE proposed that prospective settlement funds be escrowed pending resolution of the dispute so that the parties could focus on prosecuting the litigation against the major contributors. Appellants opposed that

proposition and threatened in writing to intervene in the Malone litigation if STE did not confirm the rights claimed by appellants.

In September, STE filed the present suit, initially against Bigham only, seeking declarations regarding the parties' rights under the POA, and Bigham counterclaimed for declaratory and injunctive relief. The trial court issued a temporary restraining order precluding STE from escrowing the settlement funds. The parties agreed to extend that order until a hearing on a temporary injunction.

In October, Martin received the de minimis settlement funds but advised that he intended to interplead the money into the registry of the court because he apparently considered himself as having a conflict due to the dispute between appellants and STE. Appellants then threatened in writing that Hollister would not participate in the Malone trial if appellants' shares were not distributed.

On November 2 (the Friday before the Monday Malone trial), the parties to the present case reached an interim agreement with the following terms: (1) existing settlement funds would be distributed per the POA with all parties reserving their rights relative to their dispute; (2) additional funds would not be distributed until the dispute was resolved at a temporary-injunction hearing; and (3) all parties, including Hollister specifically, would cooperate to achieve the best possible result at the Malone trial. When there was a delay that day in distributing the de minimis funds because Martin had not yet seen a signed agreement, appellants threatened in writing to intervene in the Malone litigation or make "calls" to the Malone defendants unless appellants were paid. Martin distributed appellants' shares later that day. However, Hollister did not prepare with Martin over the weekend or appear for trial on Monday.

The Malone litigation settled that Monday—before jury selection. Under the settlement terms, the major defendants paid $1.2 million, they agreed to clean up

the property, and ownership of the site was transferred to a non-profit to be used as a wetlands sanctuary. After the settlement was concluded, the fees payable under the POA were deposited into the registry of the Galveston County court. Eventually, pursuant to their motion, appellants' shares were released to them.

## C. The Claims at Issue on Appeal

STE added the claims at issue in this appeal to its existing declaratory-judgment action. STE pleaded various claims for damages against both appellants, but only breach of fiduciary duties, breach of contract, and conspiracy were ultimately submitted to a jury. These claims were based on appellants' allegedly threatening to sabotage the Malone litigation and withholding Hollister's cooperation. STE also amended its request for equitable relief to seek disgorgement of the settlement proceeds paid to appellants on the grounds that (1) the POA was void as illegal because it constituted Bigham engaging in the unauthorized practice of law, or (2) appellants breached their fiduciary duties.

The pertinent jury findings on STE's claims were the following:

- Bigham failed to comply with the POA.
- A relationship of trust and confidence existed between each appellant and STE.
- Each appellant failed to comply with his fiduciary duties to STE.
- Appellants were part of a conspiracy that damaged STE.
- The amount that would fairly and reasonably compensate STE for its damages caused by Bigham was $2 million and caused by Hollister was $500,000.
- Appellants' breaches of fiduciary duties were committed with malice.
- Exemplary damages of $50,000 should be assessed against each appellant.

8

- Jeff had authority to file this suit on STE's behalf (an issue that arose before the case was submitted to the jury).[4]

The trial court signed a "Modified Final Judgment." The court awarded STE $2.5 million against appellants jointly and severally, and $50,000 in exemplary damages against each appellant, based on breach of fiduciary duties.[5] The trial court declined to order disgorgement of fees for appellants' breach of fiduciary duties, stating the award of actual and exemplary damages was an adequate remedy.[6] The trial court did not expressly mention STE's request for disgorgement on the ground the POA was illegal, but the court denied any relief not expressly granted and had orally announced during trial its determination the POA was not illegal.[7]

Appellants filed motions for judgment notwithstanding the verdict and motions for new trial, which the trial court overruled. Appellants filed this appeal, and STE filed a cross-appeal.

## II. ISSUES ON APPEAL

Appellants present seven issues, attacking the award of actual and exemplary damages in favor of STE, which may be divided into the following categories: (1)

---

[4] Regor asserted similar claims against appellants as asserted by STE, but the jury found Regor sustained no damages, and it does not appeal the judgment.

[5] The trial court did not expressly state the judgment was based on breach of fiduciary duties, rather than breach of contract. However, the basis is apparent because the trial court awarded exemplary damages and the judgment included damages against Hollister, who was not a party to the POA.

[6] In a previous judgment, the trial court ordered disgorgement but vacated that judgment when rendering the modified judgment.

[7] Appellants counterclaimed against STE and sued Elsie and her trust, seeking damages and a declaratory judgment that the POA was enforceable. Appellants alleged these parties, inter alia, caused a lower settlement of the Malone litigation than possible by improperly revoking the POA, removing Bigham's control, and settling without his consent. The jury found either no liability or no damages on appellants' claims. Appellants do not attack the portion of the judgment ordering they take nothing on their claims.

9

the evidence is insufficient to support the jury's finding on actual damages; (2) the evidence is insufficient to support the finding that appellants breached their fiduciary duties; (3) the evidence is insufficient to support the finding that Jeff had authority to file this suit on STE's behalf; (4) errors in the jury charge require reversal even if we determine the evidence is sufficient to support the judgment; and (5) to the extent the trial court rendered judgment for breach of contract, as well as breach of fiduciary duties, that was improper.

STE presents six issues in its cross-appeal. STE first seeks affirmative relief, contending the trial court erred by refusing to order disgorgement of fees paid to appellants because (1) the POA was illegal as constituting the unauthorized practice of law by Bigham, or (2) appellants breached their fiduciary duties. STE also argues that the trial court erred by excluding evidence on three subjects: (1) appellants' breach of fiduciary duties; (2) STE's damages; and (3) whether the POA was illegal. Therefore, STE requests that, if we conclude the evidence is insufficient to support the findings in favor of STE on breach of fiduciary duties and damages, we remand for a new trial; and if we refuse to render judgment for disgorgement on the ground the POA was illegal, we remand for consideration of further evidence on that issue.

We will first address appellants' challenge to the finding that Jeff had authority to file suit on STE's behalf because that issue permeates all of its claims (whether for damages or disgorgement), and we will uphold that finding. Then, we will consider the issues concerning the finding on appellants' breach of fiduciary duties and uphold that finding. Next, we will address the issues relative to the finding on damages and conclude the evidence is legally insufficient to support the finding and the trial court did not err by excluding evidence. Finally, we will

discuss STE's request for disgorgement and conclude remand is required on whether it is entitled to that relief based on appellants' breach of fiduciary duties.[8]

### III. AUTHORITY TO FILE SUIT

In their fifth issue, appellants challenge the legal and factual sufficiency of the evidence supporting the jury's affirmative answer to the following question: "On September 10, 2007 [the day this suit was filed], did [Jeff] have the authority to file a lawsuit on behalf of STE?"[9]

When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id.* Because appellants presented their contention to the trial court as an affirmative defense, they bore the burden of proof. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988).

---

[8] Our disposition of the damages issues would be a basis alone for reversing the award of damages in favor of STE, without considering the finding of breach of fiduciary duties. However, that finding remains material to STE's cross-issue requesting disgorgement because we will conclude STE did not establish entitlement to that relief on the ground the POA was illegal but remand is appropriate on STE's request for disgorgement based on breach of fiduciary duties. But, we will consider the issues concerning the breach-of-fiduciary-duties finding while addressing appellants' original appeal—before discussing the damages issue—because the latter discussion flows more easily from an understanding of the breaches allegedly causing damages.

[9] STE argues appellants waived their contention by failing to file a motion under Texas Rule of Civil Procedure 12, which governs a party's right to require an opposing attorney to show authority to prosecute or defend the action. *See* Tex. R. Civ. P. 12. Appellants respond that Rule 12 is inapplicable because they attack Jeff's authority, not that of STE's attorney. In the trial court, appellants maintained the issue was encompassed in their pleading that STE lacked capacity. We need not decide whether appellants sufficiently presented the contention in the trial court because we conclude the evidence is sufficient to support the jury's finding.

A party attacking legal sufficiency relative to an adverse finding on which he bore the burden of proof must demonstrate the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The fact finder is sole judge of witness credibility and the weight to give their testimony. *See City of Keller*, 168 S.W.3d at 819.

In a factual-sufficiency review, we consider and weigh all the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). A party attacking factual sufficiency relative to an adverse finding on which he bore the burden of proof must demonstrate the finding is against the great weight and preponderance of the evidence. *Francis*, 46 S.W.3d at 242. We set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

Appellants argue the evidence conclusively established Jeff lacked authority to file this suit on STE's behalf. Appellants rely in part on provisions of the former article 1528n-2.23 of the Texas Limited Liability Company Act (now expired), generally providing that managers may take actions on behalf of an LLC by obtaining a vote of a majority of the managers at a meeting where a quorum is present or a vote or consent of a majority of the managers without a meeting. *See* Act of May 7, 1993, 73rd Leg., R.S., ch. 215, § 1.11, 1993 Tex. Gen Laws 418, 422, amended by Act of May 13, 1997, 75th Leg., R.S., ch. 375, § 60, 1997 Tex. Gen Laws 1516, 1566 and Act of May 20, 2003, 78th Leg., R.S., ch. 572, § 1, 2003 Tex. Gen Laws 1934, 1934 (expired Jan. 1, 2010). Appellants assert the evidence shows that, even if Jeff were a manager, he did not obtain the vote or consent of the majority of the managers.

The jury was not instructed or given evidence regarding this statutory standard, however. Accordingly, we do not consider it in our sufficiency review. Rather, we measure sufficiency of the evidence against the charge as submitted. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Landing Council of Co–Owners v. Durham*, 244 S.W.3d 462, 466 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

The broad question submitted to the jury asked generally whether Jeff had "authority" to file the suit. Appellants point to the Articles of Organization for STE, which were introduced into evidence and provide that STE "shall be managed by a manager or managers." Appellants assert Jeff was not a manager of STE when this suit was filed in September 2007. At trial, appellants presented a "Texas Franchise Tax Public Information Report," filed by STE in April of 2007 and signed by Hollister. The report listed Hollister as managing member and the two owners who are not involved in the present case as managers or officers, but did not list Jeff as a manager or officer.

We disagree that this evidence would have prevented a reasonable jury from finding that Jeff had authority to file the suit. First, the portion of the Articles of Organization providing generally that STE "shall be managed by a manager or managers" did not conclusively establish that only a manager could authorize a suit. The jury heard evidence that Jeff was a member or owner of STE, and Jeff expressly testified that he had such authority. Second, even if the authorization of a manager were required, there was conflicting evidence regarding whether Jeff was a manager. Jeff testified that the role of manager evolved to him in 2000 or 2001, and that the information in the April 2007 report was incorrect. In addition, Bigham referred to Jeff as the registered manager of STE in an email to Mitchell in

13

June 2004. Because this evidence is legally and factually sufficient to support the jury's answer to the question as submitted, we overrule appellants' fifth issue.

## IV. BREACH OF FIDUCIARY DUTIES

We turn to the issues concerning the finding that appellants breached their fiduciary duties. The jury answered "yes" for each appellant to the following question:

> Did those listed below fail to comply with their fiduciary duty to STE?
>
> In order to comply with their duty, they must show:
>
> a. The transaction in question was fair and equitable to STE;
>
> b. They made reasonable use of the confidence that STE placed in them;
>
> c. They acted in the utmost good faith and exercised the most scrupulous honesty toward STE;
>
> d. They placed the interest of STE before their own, did not use the advantage of their position to gain any benefit for themselves in any position where their self-interest might conflict with their obligations as a fiduciary; and
>
> e. They fully and fairly disclosed all important information to STE concerning the transaction.

### A. Alleged Jury Charge Error

We will first address the portion of appellants' sixth issue challenging the jury question, to dispose of that issue and determine the standard against which to measure sufficiency of the evidence. *See Osterberg*, 12 S.W.3d at 55; *Landing Council of Co–Owners*, 244 S.W.3d at 466. Appellants complain that the trial court failed to limit the jury's consideration to conduct occurring before revocation

of the POA and all conduct allegedly constituting a breach of fiduciary duties occurred after the revocation.[10]

The trial court has considerable discretion to determine necessary and proper jury instructions. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). We review its refusal to submit a particular instruction for abuse of discretion. *Id.* We may reverse and remand based on jury-charge error only if it "was reasonably calculated and probably did cause the rendition of an improper judgment," considering the pleadings, the evidence presented at trial, and the charge in its entirety. *See* Tex. R. App. P. 44.1(a)(1); *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex. 1986) (op. on reh'g).

Relative to Hollister, it is undisputed he owed fiduciary duties as a member of STE—not pursuant to the POA; although he was designated under the POA to receive a percentage of STE's recovery in the Malone litigation, he was not a signatory to the POA. Consequently, revocation of the POA did not eliminate his fiduciary duties. Thus, the trial court did not abuse its discretion by refusing to limit the period during which his conduct would violate fiduciary duties.

With respect to Bigham, his fiduciary duties existed solely because of the POA. However, "the general rule is that confidential information received during the course of fiduciary relationships may not be used or disclosed to the detriment of the one from whom the information is obtained" even after termination of the relationship. *See Numed, Inc. v. McNutt*, 724 S.W.2d 432, 434 (Tex. App.—Fort Worth 1987, no writ). Thus, Bigham could violate fiduciary duties by threatening, after revocation of the POA, to reveal harmful information about STE that he learned before the revocation (as further described below in our sufficiency analysis).

---

[10] Appellants do not challenge the finding that they each owed fiduciary duties to STE.

Additionally, Bigham did not treat the POA as revoked. Rather, he maintained that it still gave him the right to control the Malone litigation and receive a percentage of all proceeds; and he obtained those fees even from proceeds realized after revocation of the POA. Whether he must disgorge those fees because he violated fiduciary duties owed under the POA is another question, but he was paid as though he still retained rights under the POA. Therefore, the trial court acted within its discretion by rejecting the notion that Bigham could reap the benefits of the POA yet avoid correlating fiduciary duties to STE. Accordingly, the trial court did not abuse its discretion by refusing to limit the jury's consideration to Bigham's conduct occurring before revocation of the POA.

Alternatively, even if the trial court erred by not including such a limitation, any error was harmless. As discussed below, STE presented evidence that some such conduct occurred before revocation of the POA. Thus, Bigham cannot establish the jury would have made a different finding if the trial court had included the requested limitation. *See* Tex. R. App. P. 44.1(a)(1); *Island Recreational Dev. Corp.*, 710 S.W.2d at 555. We overrule the pertinent portion of appellants' sixth issue.

## B. Sufficiency of the Evidence

In their fourth issue, appellants contend the evidence is legally and factually insufficient to support the jury's finding. Although STE was the claimant, the jury question placed the burden on appellants to prove they complied with their fiduciary duties. Accordingly, we apply the standard for reviewing sufficiency applicable when the appellant bore the burden of proof. As the question was phrased, appellants were required to establish all five factors listed therein. We conclude the evidence does not conclusively establish they complied with any of the factors, there was evidence supporting a failure to comply, and the finding is

16

not against the great weight and preponderance of the evidence.  *See Frances*, 46 S.W.3d at 24–42.

STE primarily complains about two actions as violating appellants' fiduciary duties: (1) threatening to provide harmful information to the defendants in the Malone litigation; and (2) withholding Hollister's cooperation in that litigation.

### 1. Threats to provide harmful information to the Malone defendants

STE presented evidence that appellants made such threats, both before and after revocation of the POA.

### a. Pre-revocation conduct

STE's complaint regarding pre-revocation conduct focused on its allegation that Bigham threatened to reveal STE was not an innocent landowner.  According to Jeff and Martin, in July 2007, Bigham said he had a witness who would testify in the Malone litigation that another company partially owned by Jeff illegally deposited waste at the Malone site after it was declared a Superfund site.  Jeff testified that when Bigham first mentioned this information, he said not to tell Martin.  Jeff was "incensed" that Bigham would attempt to conceal information from STE's lawyers and went straight to Martin's office.[11]  Martin then had numerous conversations with Bigham in which Bigham made the same threats.[12]

_____

[11] Jeff testified this occurred in July whereas Martin thought it was March.  In its role to reconcile conflicts, the jury was free to believe Martin was mistaken and it occurred in July.

[12] Jeff's and Martin's testimony differed somewhat on their conversations with Bigham. Martin referred to the potential witness as a "secret witness" because Bigham would not reveal his identity despite multiple requests, and Martin's investigation led him to believe Bigham's claim was fabricated.  In contrast, at one point, Jeff characterized Bigham's threat as involving a "secret witness," but Jeff later acknowledged that Bigham revealed the person's identity.  Jeff's testimony also reflected the claim was not fabricated because Jeff discovered the company had deposited waste, albeit a harmless substance, at the site.  Appellants emphasize this inconsistency and seem to characterize Bigham's actions as innocent because the claim was true.  However the jury could have reasonably concluded that Bigham provided inconsistent information to Jeff and

17

Jeff was distraught his clean-hands status might be destroyed and "absolutely floored" that Bigham threatened to sabotage the litigation and take actions adverse to Jeff and his family. Bigham denied making such threats and instead characterized his actions as warning this information could harm STE's position in the litigation. However, the jury was free to believe Jeff and Martin.

The jury could rationally infer that Bigham made these threats in an attempt to force a settlement and obtain his share of the funds because he was experiencing financial difficulties. Around this time, a judgment for $50,000 was entered against him, and he was guarantor on another $4 million debt that was in arrears. Several months before, Bigham had begun insisting, contrary to Jeff's wishes, that the property be conveyed to settle the Malone litigation because Bigham believed it was valuable to the defendants.[13] Martin opined that Bigham behaved as though timing of the settlement was important to him and his threats were motivated by the need for leverage and financial difficulties.

In August, Bigham made comments more overtly tying the threat to Jeff's resistance to settling under Bigham's proposed terms and generally showing antagonism to STE's interests. Jeff testified that he gave Bigham a box of jello and stated that was the nature of the product his other company had deposited. Bigham responded that he was "tired of [Jeff's] BS" and if Jeff thought his family would still own the property after the Malone litigation was resolved, Jeff "had another thing coming" because Bigham "had made damn sure that it didn't happen."

Martin. Nonetheless, whether the witness was secret or the information was true, the significant fact was Jeff's and Martin's consistent testimony that Bigham threatened to reveal the information to the Malone defendants.

[13] Until the threats, Jeff wanted to keep the property in the family for future business endeavors, but once the threats were made, that was no longer an option, and it was ultimately conveyed to settle the litigation, albeit to a non-profit.

The jury could reasonably conclude that Bigham violated his fiduciary duties to STE by threatening to undermine its position in the Malone litigation so that Bigham could obtain a quick payment.[14] Bigham acknowledged such actions would not be in STE's best interests although he denied engaging in such conduct.

The jury also heard evidence regarding other actions of Bigham before revocation of the POA that alone would demonstrate a breach of fiduciary duties but also supported that his threats to reveal STE was not an innocent landowner were made to force a settlement under his timing and terms.

Specifically, while Bigham was demanding in writing that Martin confirm Bigham controlled the litigation in the event of a dispute with Jeff, Bigham instructed Martin not to share Bigham's comments with Jeff. According to Martin, that was not the first time Bigham had made such a request. Martin considered it unethical to refrain from disclosing matters to a client. In addition to violating fiduciary duties, there is a rational inference that Bigham's instructions were meant to ensure Martin followed Bigham's wishes regarding settlements without interference from Jeff.

As another instance, STE presented evidence that Bigham's choosing Mitchell as STE's counsel once Mitchell and Martin dissolved their partnership was not in STE's best interest. Mitchell had been absent during critical stages of the litigation due to a family illness, and Martin had primarily handled the case. Appellants argue this action could not constitute a breach of fiduciary duties

---

[14] On appeal, appellants suggest STE may not complain about Bigham's insistence that the property be conveyed as an independent breach of fiduciary duties because Regor—not STE—owned the property at that point. Even if STE would not be directly harmed by such conveyance, the significant fact was Bigham made threats to undermine STE's position in the Malone litigation in an attempt to force a settlement that included conveying the property.

19

because Bigham was authorized under the POA to hire counsel. However, Bigham acknowledged his fiduciary duties encompassed ensuring the Malone litigation was transferred to the appropriate attorney. The jury could further infer that Bigham chose Mitchell because Martin refused to confirm Bigham had complete control over settlement negotiations.

### b. Post-revocation conduct

After the POA was revoked, appellants made more affirmative threats to sabotage the Malone litigation.

Shortly after the revocation, appellants' attorney (apparently speaking only for Bigham at that point) sent the following email to Martin and Mitchell while insisting that STE confirm Bigham was entitled to a share of prospective proceeds from the Malone litigation:

> This note is also to put all on notice that if this litigation is pushed forward as currently postured, I will take action to protect [Bigham's] interest. The unfortunate part of that is that the [Malone] Defendants will be enlightened to the detriment of this case. I hope we can come to an uneasy truce to get this case tried . . . without the Defendants being apprised.

The parties disagree as to what action the attorney threatened that would "enlighten[]" the Malone defendants. STE suggested it meant revealing STE was not an innocent landowner. Bigham suggested it meant intervening in the Malone litigation to obtain his payment, which would "enlighten[]" the Malone defendants about the discord on the STE side of the case. The surrounding correspondence indicates the latter was Bigham's intent, and STE understood that was the threat.

Regardless, the jury could conclude that even threatening an intervention violated Bigham's fiduciary duties because (1) there were other avenues to protect his right, if any, to a share of the proceeds without undermining STE's posture in

20

the Malone litigation—such as filing a separate action, as Bigham later did, or agreeing to escrow the funds pending resolution of the dispute, as the parties eventually agreed with respect to some funds; and (2) there is a rational inference, based on the wording of the email and Bigham's earlier conduct, that "enlighten[ing]" the Malone defendants about the discord was intended and not merely suggested as an "unfortunate" result. At the present trial, Martin testified he was still "speechless" about the threat to "enlighten[]" the defendants.

Moreover, the jury could again infer the threat was made not only to ensure Bigham was paid but to force a settlement because the attorney also tied the threat to (1) a demand for confirmation that Bigham alone controlled the Malone litigation, and (2) a demand that STE accept a $1 million offer from the major contributors, which Martin deemed "inappropriate" because there was "more money on the table." The jury could construe the latter demand as alone supporting a violation of fiduciary duties because Bigham acknowledged he had a duty to maximize STE's recovery, in addition to indicating the motives for Bigham's threats.

Then, on the Friday before the Monday Malone trial, there was a delay in distributing the de minimis settlement funds pursuant to the parties' interim agreement. Appellants' attorney (now acting on behalf of both appellants) emailed Martin, stating that if the funds were paid that day, "[Hollister] will cooperate and the trial can go forward with no intervention by [appellants] or any calls to the other side." This time, the jury could infer that "calls to the other side" definitely meant informing the Malone defendants that STE was not an innocent landowner because the attorney had already mentioned intervention as a separate threat.

The jury could conclude this latter communication violated appellants' fiduciary duties because (1) the desire to be paid did not justify threatening to

21

destroy STE's status as innocent landowner, (2) Hollister, who was now a party to the threats, owed a fiduciary duty, as a member of STE, not to harm its position in the Malone litigation, irrespective of whether he received any proceeds under the POA, and (3) appellants admitted at the present trial that the idea of "calls to the other side" was offensive and not "fair" and "honorable," although they maintained it just meant an intervention.

## 2. Withholding Hollister's cooperation in the Malone litigation

With respect to this aspect of STE's claim, it is undisputed both appellants and their attorney knew Hollister was the key witness in the Malone litigation. He was the only designated expert on contamination and clean-up, and the case would not reach a jury without his testimony.

Appellants' threats to withhold Hollister's cooperation began a few weeks before the Malone trial date when Martin advised that he intended to deposit the de minimis settlement funds in the registry of the court. Hollister told Martin he "did not care" about the upcoming trial date and was "not going to testify, period" unless he was guaranteed a share. Although Hollister alone made this communication, Martin learned Bigham would not permit Hollister (now Bigham's employee) to testify.

Then, as quoted above, on the Friday before trial, appellants' attorney again threatened that Hollister would not cooperate unless appellants were paid that day pursuant to the interim agreement. Martin testified that, later that day, he personally distributed the funds to Hollister at Martin's office. However, when Martin stated they needed to discuss the trial, Hollister ignored him and walked out. Hollister did not meet with Martin over the weekend or attend trial on Monday. Hollister claimed that no one asked for his help over the weekend and he was told he need not appear for jury selection on Monday. However, the jury was

free to believe Martin's contrasting testimony that Hollister ignored Martin's repeated attempts to contact him over the weekend and Martin never told Hollister he need not appear on Monday.

The jury could conclude that appellants violated fiduciary duties by threatening to withhold Hollister's cooperation in order to obtain payment because again, as a member of STE, he had a duty to achieve an optimal result at the Malone trial, irrespective of whether he received any proceeds under the POA. And, once again, there was a rational inference that appellants also withheld Hollister's cooperation in an attempt to force a settlement—based on appellants' other conduct; and the fact that Hollister failed to appear for trial even after he was paid pursuant to the interim agreement and promised to cooperate.

In summary, the evidence is legally and factually sufficient to support the jury's finding that appellants failed to establish they complied with their fiduciary duties to STE. Accordingly, we overrule appellants' fourth issue.[15]

## V. THE DAMAGES FINDING

Next, we consider the issues and cross-issues regarding the jury's finding on damages. The damages question asked, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [STE] for [its] damages, if any . . . caused by [Bigham]" and "caused by [Hollister]?" The jury answered $2 million for Bigham and $500,000 for Hollister.

### A. Sufficiency of the Evidence

In their first three stated issues, appellants contend the evidence is legally and factually insufficient to support the jury's finding. When, as applicable to this

---

[15] Because of our disposition, we need not address STE's fourth cross-issue, challenging exclusion of evidence allegedly demonstrating appellants breached their fiduciary duties.

issue, a party challenges legal sufficiency relative to an adverse finding on which he did not bear the burden of proof, he must show that no evidence supports the finding. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). When a party challenges factual sufficiency relative to an adverse finding on which he did not have the burden of proof, we consider all the evidence and will set aside the finding only if the evidence supporting it is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). Because we conclude there is no evidence to support the jury's finding in this case, we do not address the factual-sufficiency contention. *See id.*

Appellants challenge legal sufficiency of the evidence to support the finding for three reasons: (1) there is no evidence appellants' conduct caused STE to settle the Malone litigation for an amount less than it could have otherwise settled; (2) STE was not the party who sustained any damages because it was not designated under the POA to receive any of the litigation proceeds; and (3) there is no evidence of any amount for which STE could have settled but for appellants' conduct. We agree with the first and third arguments for interrelated reasons and, thus, we need not consider the second contention.

The crux of STE's argument for upholding the damages award is that appellants' conduct on the eve of trial (threatening to reveal STE was not an innocent landowner and withholding Hollister's cooperation) forced STE to settle the Malone litigation for "well below its reasonable settlement evaluation." However, we conclude STE presented no evidence demonstrating it would have achieved a larger settlement (or recovery a trial) but for appellants' conduct, much less evidence regarding the amount of such settlement or recovery.

24

The case against the major Malone defendants settled for $1.2 million. The jury awarded STE $2.5 million against appellants in the present case. Therefore, to uphold that award, there must have been evidence that STE would have recovered at least $3.7 million from the major defendants but for appellants' conduct.

Martin testified that appellants' conduct created a "dark cloud" over the Malone litigation up through the final settlement negotiations. Martin further explained that this factor affected his negotiating strength because he could not "push as hard" and recommended a settlement lower than he would have otherwise recommended.

This general testimony regarding Martin's negotiating strength and his recommending a lower amount does not constitute evidence that STE would have successfully obtained a larger settlement, or the amount of any such settlement, but for appellants' conduct. Significantly, Martin did not opine that STE would have necessarily obtained a larger settlement or identify any dollar figure for such a settlement. As appellants emphasize, the trial court precluded Martin from testifying as an expert in the present case because that would create a conflict of interest, considering Bigham was a party to Martin's contingency-fee agreement in the Malone litigation.

The parties do not cite, and we have not found, any authority exactly on point with the present case. However, we find legal malpractice cases instructive to the extent they set forth the evidence necessary to establish that a client would have received a better recovery but for his attorney's acts or omissions—a standard of causation and measure of damages similar to that asserted in the present case, although appellants were not attorneys. Courts addressing that issue have held that expert testimony is sufficient, and required, to establish causation and the amount of damages.

25

Specifically, the Supreme Court of Texas recently recognized that the damages in a legal-malpractice case consist of "'the amount of damages recoverable and collectible . . . if the suit had been properly prosecuted.'" *Elizondo v. Krist*, 415 S.W.3d 259, 263 (Tex. 2013) (quoting *Cosgrove v. Grimes*, 774 S.W.2d 662, 666 (Tex. 1989)). It is not necessary that a client prove the difference between the settlement received and the damages he would have been obtained if the case had been tried to a final judgment. *See id.* at 263. Instead, the client may recover the difference between the settlement received and the settlement he probably would have recovered absent malpractice. *See id.* at 263, 270. However, in the latter situation, the court recognized that the client must present expert testimony of the settlement value absent malpractice because proof of causation and damages in a malpractice case requires knowledge beyond that possessed by most laypersons. *See id.* at 270; *see also Goffney v. O'Quinn*, No. 01-02-00192-CV, 2004 WL 2415067, at *5–6 (Tex. App.—Houston [1st Dist.] Oct. 28, 2004, no pet.) (mem op.) (holding in legal-malpractice case that expert testimony was required to prove that but for counsel's alleged deficiencies, clients would have received a settlement amount or jury verdict greater than that which they actually received because such matters are not within a fact finder's common knowledge); *Arce v. Burrow*, 958 S.W.2d 239, 252 (Tex. App.—Houston [14th Dist.] 1997), *aff'd, in part, and rev'd, in part, on other grounds*, 997 S.W.2d 229 (Tex. 1999) (holding in legal malpractice case, that a lay jury cannot be expected to ascertain, without guidance from a legal expert, whether an attorney obtained a reasonable settlement for his or her client and whether attorney caused damage to client is a question upon which the trier of fact must be guided solely by expert testimony).

The *Elizondo* court determined that the expert opinion offered by the clients was insufficient to raise a fact issue on damages. *See* 415 S.W.3d at 264–69. We need not consider what expert testimony would be sufficient to constitute evidence of causation and damages in the present case because STE did not proffer any expert testimony. No expert opined that STE would have received a larger settlement or recovery at trial but for appellants' conduct or set forth the amount of such settlement or recovery.

STE relies on two items of testimony as purportedly evidence of the difference between the actual settlement and one it would have obtained.

First, STE asserts that Bigham testified the value of the settlement was about $20 million and he should be considered an expert on recoveries in environmental litigation. Bigham did opine that the value of the property to the major defendants in the Malone litigation—the amount they would have paid for it—was $20 million. Bigham offered that figure when attempting to prove, relative to his own claims, that the case would have settled for more than $1.2 million if he had retained control of the litigation and settlement negotiations.

However, as appellants emphasize, the land was not conveyed to the defendants but instead to a non-profit organization. Therefore, Bigham's general testimony regarding the value of the land to the defendants does not show that they would have necessarily paid that amount to settle the litigation. Further, Regor, not STE, owned the land at the time of the settlement. Thus, Bigham's testimony does not demonstrate that STE, as opposed to Regor, would have necessarily received $20 million from the Malone defendants for the property even if the property had been conveyed to those defendants and they were willing to pay such amount.

27

Moreover, Bigham did not have control because STE removed him from that role, and Martin negotiated the settlement without Bigham's involvement. Notably, Martin testified there was no value to the Malone defendants in owning the property and they merely wanted control of it for clean-up purposes. It is Martin's perceptions on which STE relies to prove causation in the present case—his testimony that **he** would have pushed for a larger settlement but for appellants' conduct. Considering Martin perceived the property had no monetary value to the Malone defendants and he was the one negotiating the settlement, Bigham's view the defendants would have paid $20 million for the property did not prove any larger settlement that STE could have obtained. In short, Martin might have pushed for a larger settlement but for appellants' conduct, but STE did not present evidence that Martin would have pushed for a settlement in which the defendants paid $20 million for the land, considering Martin thought the land had no monetary value to the defendants.

Second, STE asserts that Martin testified the "settlement value" was "in the $10-$12 million range" before appellants' conduct. However, Martin did not expressly state the settlement value was in that range. Rather, when asked whether the value of the case was in that range, he responded that "one of the **demands** was in that range early on." (emphasis added). STE also presented a letter from Mitchell to the Malone defendants in April 2007, outlining alleged damages between $8.75 million and $14.4 million (depending on whether interest and attorney's fees were recoverable) and demanding $11.8 million to settle the case— to possibly be adjusted to $7.5 million if the defendants agreed to provide certain indemnification. Martin testified that at the time of the Malone trial, the "upside range of [STE's] damage model had [it] been successful" was $9-$12 million. Martin further testified that when the defendants offered $1 million shortly before

28

trial, he was still trying to obtain $7 million. We conclude that, absent expert testimony, evidence of a particular settlement demand, the amount STE hoped to obtain, or the recoverable damages **if** STE had been successful at trial is not evidence that STE would have actually achieved such a settlement or been successful in obtaining such a recovery at trial.

STE also cites authority recognizing that a jury has discretion to award damages within the range of evidence presented at trial. *See Gulf States Util. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002). As STE notes, it is unclear how the jury in the present case derived its amount of assessed damages, but STE maintains we may uphold the amount because it was within the range of evidence on damages. *See Drury Sw., Inc. v. Louie Ledeaux #1, Inc.*, 350 S.W.3d 287, 292 (Tex. App.— San Antonio 2011, pet. denied) (stating that, when the award falls within the evidentiary range, the reviewing court should not speculate on how the fact finder arrived at the amount). However, this principle presumes there has been competent evidence of a range of damages. *See Salinas v. Rafati*, 948 S.W.2d 286, 289 (Tex. 1997) (stating, in the context of a verdict within the range of damages: "A jury must have an evidentiary basis for its findings.").

In the present case, there was no evidence establishing a range of damages. As discussed above, neither Bigham's $20 million figure, STE's demand, nor the amount of its potential recovery **if** it had been successful at trial provided a minimum figure that it would have actually recovered but for appellants' conduct, and there was no expert testimony regarding such a figure—with the jury then entitled to pick any figure equal to that amount or lower.

Importantly, we point out that STE did not attempt at trial to prove a larger amount it would have allegedly recovered but for appellants' conduct. In this regard, it was **appellants** who sought damages representing the difference between

29

the settlement achieved and one that purportedly could have been obtained. Appellants maintained that STE and its associated parties caused this difference and thus a reduction in appellants' share of proceeds by removing Bigham's control and settling without his consent. The import of STE's position at trial relative to the amount of the settlement was to defend against appellants' claims. In fact, there were instances in which STE objected to appellants' attempts to prove a larger settlement would have been obtained.

As mentioned above, STE did elicit general testimony from Martin about settling for less than he would have otherwise recommended. But, STE seemed to present such testimony to show the extent of appellants' bad faith, to support STE's request for disgorgement of appellants' proceeds based on breach of fiduciary duties—not to recover the difference between the actual and potential settlements as damages. In fact, in closing argument, STE asked only for disgorgement—not damages representing a larger settlement but for appellants' conduct.[16] We do not hold that STE was necessarily limited to the damages it requested in closing argument because the jury question did not limit damages to any particular category. However, we point out the position taken by STE at trial as apparently indicating the reason it did not present evidence that it would have obtained a larger recovery but for appellants' conduct. None of the evidence now relied on by STE in an attempt to defend its award of damages supports the award.

In summary, we conclude the evidence is legally insufficient to support the jury's finding that STE sustained $2.5 million in damage as a result of appellants' breach of fiduciary duties. Finally, with respect to Bigham, the damages question was not directed only to those caused by breach of fiduciary duties because the

---

[16] We note that disgorgement of proceeds appellants received under the POA are not damages caused by their conduct and cannot support the award of damages, although we will discuss below STE's request for disgorgement on equitable grounds.

30

jury also found that he breached the POA. However, we may not alternatively uphold the judgment against Bigham, even for actual damages, based on breach of contract, because STE seeks the same damages for both claims. Accordingly, we sustain appellants' first and third issues challenging the award of damages and seventh issue asserting the trial court erred to the extent it awarded damages for breach of contract.[17]

## B.    Exemplary Damages

We agree with appellants that, because the evidence is legally insufficient to support recovery of actual damages, the trial court erred by awarding exemplary damages. *See Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 745 (Tex. 1986) (reciting rule there must be a finding of actual damages in tort to uphold an award of punitive damages).

## C.    Exclusion of Evidence on Damages

Having concluded there is no evidence to support the award of damages, we must address STE's fifth cross-issue, arguing the trial court erred by excluding evidence relative to STE's damages. We review a trial court's decision to exclude evidence for abuse of discretion. *McBride v. McBride*, 396 S.W.3d 724, 730 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or its decision is arbitrary or unreasonable. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

STE refers to multiple offers of proof made in the trial court. The offers were in narrative form summarizing testimony that would have been elicited from

---

[17] Because of these dispositions, we need not consider the portion of appellants' sixth issue challenging the jury questions concerning breach of contract.

various witnesses. STE references six areas of proffered testimony as concerning its damages: Offer Nos. 1, 2, 3, 5, 7, and 8. We conclude the trial court did not abuse its discretion by excluding the evidence, at least with respect to the issue of STE's damages.

Offer Nos. 1-3 were Martin's anticipated testimony explaining (1) that owning the property would have no monetary value to the Malone major defendants, (2) why the property was conveyed to a non-profit, rather than the Malone defendants, in the settlement, and the trust mechanism for accomplishing the transfer, and (3) that Martin considered $1.2 million a fair and reasonable settlement with the major Malone defendants.

These areas of testimony were proffered to defend **against** appellants' claims, asserting the Malone settlement would have been larger if Bigham had retained control of the litigation. This testimony was not relevant to proving STE's damages and, in fact, would tend to disprove STE's damages and was polar opposite to the position it takes on appeal—the settlement would have been larger but for appellants' conduct.[18]

Offer Nos. 5, 7, and 8 were anticipated testimony of Martin and one of the attorneys hired by STE to oversee the Malone litigation and the dispute between STE and appellants after revocation of the POA. This testimony collectively concerned the following subjects: (1) changing counsel from Martin to Mitchell, when their partnership dissolved, was not a sound decision; (2) certain meetings

---

[18] We note it was not STE, but rather Elsie, who made these offers of proof. We need not decide whether STE may rely on Elsie's proffer to preserve error because the trial court did not abuse its discretion, relative to STE's claim for damages, by excluding the evidence. However, we note this fact as demonstrating why the excluded testimony was not proffered to prove STE's damages; Elsie was defending solely against appellants' claim that her revoking Bigham's control under the POA caused a lower settlement and attempting to **disprove** that there would have been a larger settlement—the same position that STE took at trial.

between STE, appellants, and their attorneys after revocation of the POA were not settlement discussions; and (3) during the meetings, appellants threatened to sabotage the Malone litigation. The trial court had excluded testimony regarding the content of the discussions on the ground the meetings were settlement negotiations regarding the dispute between the parties to the present case.

We construe this proffered testimony as relevant only to the issue of whether appellants breached their fiduciary duties and not to whether STE would have obtained a larger recovery, and in what amount, but for appellants' conduct. Thus, notwithstanding whether any of the excluded testimony was cumulative of admitted testimony, we need not consider STE's complaint because we have upheld the finding that appellants breached their fiduciary duties. We overrule STE's fifth cross-issue.

## VI. REFUSAL TO ORDER DISGORGEMENT

We turn to the portions of STE's cross-appeal, challenging the trial court's refusal to order disgorgement of the proceeds paid to appellants on the grounds that (1) the POA was illegal, or (2) appellants breached their fiduciary duties.

## A. Contention that the POA was Illegal

In its first and second interrelated cross-issues, STE contends the POA was an illegal contract because it consisted of Bigham, who is not an attorney, engaging in the practice of law. STE asserts Bigham engaged in the unauthorized practice of law by retaining the right to hire counsel, direct the filing of pleadings, and otherwise control the litigation, in exchange for a percentage of STE's total recovery in the Malone litigation. Although the authority granted under the POA applied only to Bigham, STE seeks to disgorge the fees paid to both appellants because the fees were derived from the POA.

33

STE requested disgorgement on this ground in its pleadings. The trial court entertained argument on the issue when appellants moved for a "directed verdict" on the request. The trial court orally announced its conclusion that the POA did not constitute the unauthorized practice of law. In the judgment, the trial court did not expressly mention STE's request for a declaration that the POA was illegal, but the court denied the request by ordering that all other requested relief not expressly granted was denied. STE requests that we reverse and render an order of disgorgement.

Although a jury trial was conducted on STE's claims for damages and the breach-of-fiduciary-duty question underlying one of STE's requests for disgorgement, the unauthorized-practice-of-law determination and whether to order disgorgement on that basis were issues for the bench. *See Burrow v. Arce*, 997 S.W.2d 229, 245–46 (Tex. 1999); *Unauthorized Practice Comm., State Bar of Texas v. Cortez*, 692 S.W.2d 47, 50–51 (Tex. 1985); *Brown v. Unauthorized Practice of Law Comm.*, 742 S.W.2d 34, 41 (Tex. App.—Dallas 1987, writ denied). Equitable relief, such as fee forfeiture, is not mandatory because "the expediency, necessity, or propriety" of such relief is committed to the trial court's discretion. *See Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428–29 (Tex. 2008); *Burrow*, 997 S.W.2d at 240–42, 246. Accordingly, a trial court's decision on whether to order such equitable relief is reviewed for abuse of discretion. *See Wagner & Brown, Ltd.*, 282 S.W.3d at 428–29; *Burrow*, 997 S.W.2d at 240–42, 246.

The trial court did not issue findings of fact and conclusions of law regarding its refusal to order disgorgement on the unauthorized-practice-of-law ground. Further, because the trial court did not expressly mention that issue in the judgment, nothing therein can be construed as findings of fact and conclusions of

34

law regarding its decision. We may not consider a trial court's oral comments at trial as a substitute for findings of fact and conclusions of law. *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984) (per curiam); *In re J.C.*, 346 S.W.3d 189, 193 (Tex. App.—Houston [14th Dist.] 2011, no pet.). In the absence of written findings, we imply that the trial court made all necessary findings, and we will uphold the judgment on any legal theory supported by the evidence. *In re J.C.*, 346 S.W.3d at 193 (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Chenault v. Banks*, 296 S.W.3d 186, 189 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). Accordingly, we are not bound by the trial court's oral comments and need not decide whether the POA consisted of Bigham engaging in the unauthorized practice of law because even if did, STE fails to show the trial court abused its discretion by refusing to order disgorgement on that ground.

STE does not cite authority demonstrating a trial court must order disgorgement of a fee if the payee has engaged in the unauthorized practice of law. The cases STE cites as purportedly requiring disgorgement do not support that proposition. STE cites cases recognizing that courts will not aid in the enforcement of a contract made for the illegal practice of law. *See, e.g., Robnett v. Kirklin Law Firm*, 178 S.W.3d 45, 51–52 (Tex. App.—Houston [1st Dist.] 2005); *Johnson v. McLeaish*, No. 05–94–01673–CV, 1995 WL 500308, at *6 (Tex. App.—Dallas Aug. 23, 1995, writ denied) (not designated for publication). However, in those cases, the person engaged in the unauthorized practice of law was seeking to recover an unpaid fee allegedly due under a contract determined to be illegal. *See Robnett*, 178 S.W.3d at 46–47; *Johnson*, 1995 WL 500308, at *1–2, 8. Those courts did not address a request for equitable relief in the form of disgorgement of fees already paid under an illegal contract. *See, generally, Robnett*, 178 S.W.3d 45; *Johnson*, 1995 WL 500308.

35

In addition, STE does not cite any authority that disgorgement is a requisite or appropriate remedy when a contract is determined to be illegal. The central purpose of the equitable remedy of profit disgorgement or fee forfeiture is to remedy a breach of fiduciary duty or violation of trust by discouraging disloyalty. *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010). Thus, the remedy presupposes a valid relationship, whether created by contract or otherwise, in which one party has violated the other party's trust and must forfeit its benefits under the contract. *See id.* In contrast, if part of the consideration under a contract is illegal, the contract is generally void as to all parties if it is entire and indivisible. *See In re Kasschau*, 11 S.W.3d 305, 312 (Tex. App.— Houston [14th Dist.] 1999, orig. proceeding); *Richmond Printing v. Port of Houston Auth.*, 996 S.W.2d 220, 224 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Evans v. Dynasty Transp., Inc.*, 133 S.W.3d 672, 677 (Tex. App.—Corpus Christi 2003, no pet.) (citing *Cooper v. Fortney*, 703 S.W.2d 217, 222 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.)). STE has not demonstrated that disgorgement of only one party's benefits received under a contract is required when the contract is determined to be illegal as to all parties.[19] Consequently, the trial court would not have abused its discretion by denying such relief even if the POA were illegal. Accordingly, we overrule STE's first and second cross-issues.[20]

## B. Disgorgement Based on Breach of Fiduciary Duties

In its third cross-issue, STE seeks disgorgement of appellants' fees on the ground they breached their fiduciary duties to STE. Disgorgement of fees is an

---

[19] We further discuss below STE's request for disgorgement on the ground that Bigham (and Hollister) breached their fiduciary duties, but that is a separate ground for disgorgement than a request that only appellants must forfeit their fees because the POA was void as illegal.

[20] In light of this disposition, we need not address STE's sixth cross-issue, challenging the trial court's exclusion of evidence allegedly relevant to whether Bigham engaged in the unauthorized practice of law.

appropriate remedy for breach of fiduciary duties, albeit a matter within the trial court's discretion. *See ERI Consulting Eng'rs*, 318 S.W.3d at 873; *Wagner & Brown, Ltd.*, 282 S.W.3d at 428–29.

Unlike the previous issue, the trial court did expressly recite in the judgment its sole reason for refusing to order disgorgement based on breach of fiduciary duties—STE's award of damages was an adequate remedy for such breaches. Although the trial court has discretion on whether to order disgorgement, its sole ground for rejecting such relief no longer exists in light of our reversing the award of damages. Therefore, we will remand to the trial court to reconsider whether to order disgorgement under the present circumstances of the case and in what amount. Accordingly, we sustain STE's third cross-issue.

## VII. Conclusion

We reverse the portion of the judgment awarding STE actual damages, exemplary damages, and pre- and post-judgment interest thereon, and render judgment that STE take nothing on its claim for damages.

We reverse the portion of the judgment denying STE's request for disgorgement based on appellants' breach of fiduciary duties and remand for further proceedings consistent with this opinion.

We affirm the remainder of the judgment.


/s/ John Donovan
Justice


Panel consists of Justices McCally, Busby, and Donovan.