**Motion for Rehearing Granted in Part and Denied in Part; Opinion of November 30, 2017, Withdrawn; Affirmed in Part, Reversed and Rendered in Part, Reversed and Remanded in Part, and Substitute Opinion filed March 8, 2018.**

In The

## Fourteenth Court of Appeals

---

### NO. 14-16-00839-CV

---

### RICHARD NUGENT AND CAO, INC., Appellants

### V.

### THE ESTATE OF JANIE BAKER ELLICKSON, Appellee

---

**On Appeal from the County Court at Law No. 2 & Probate Court
Brazoria County, Texas
Trial Court Cause No. PR30539-A**

---

### S U B S T I T U T E   O P I N I O N

We grant Richard Nugent's and CAO, Inc.'s motion for rehearing in part and render a take nothing judgment in favor of CAO, Inc.; we overrule the remainder of appellants' motion. We withdraw our opinion dated November 30, 2017, and issue the following substitute opinion.

The Estate of Janie Baker Ellickson sued Nugent and CAO, Inc. asserting claims for breach of contract, breach of fiduciary duty, and promissory estoppel in connection with the sale of Ellickson's house. The trial court assessed liability for

breach of fiduciary duty and awarded damages against Nugent and CAO, Inc. following a bench trial. We affirm the trial court's judgment in part; reverse and render in part; and reverse and remand in part for further proceedings consistent with this opinion.

## OVERVIEW

Nugent and CAO, Inc., a company he owned and controlled, participated in real estate transactions involving 71-year-old Janie Ellickson and a house she owned in Galveston County, Texas. Central to this appeal is the fiduciary relationship created when Ellickson signed a power of attorney in favor of Nugent. The power of attorney permitted Nugent to sell the Galveston County house on Ellickson's behalf and execute documents related to the sale.

Nugent sold the house to Michael Womack on January 21, 2008. Nugent negotiated for a trust he controlled to receive $137,004.40 from the sale; Ellickson was to receive $115,926.80. Ellickson died on June 9, 2008. Womack ceased to make the required payments within a year of the sale, and the house was sold for $20,000 at a foreclosure sale on January 6, 2009.

Ellickson's estate sued Nugent and CAO, Inc. on July 10, 2012. The estate asserted claims focusing on the fairness of the January 2008 sale terms; the failure to insure the house, which suffered damage when Hurricane Ike came ashore in September 2008; and Nugent's failure to notify Ellickson's estate of the 2009 foreclosure sale. The trial court conducted a bench trial and concluded that Nugent committed four breaches of fiduciary duty because he

- failed to direct all of Womack's payments to Ellickson;

- directed a disproportionate share of the 2008 sale proceeds to a trust controlled by Nugent;

- failed to make sure Womack maintained insurance on the house; and

2

- failed to notify Ellickson's estate of the 2009 foreclosure sale.

The trial court concluded that CAO, Inc. was liable as Nugent's alter ego. It signed a final judgment awarding $163,843.64 in damages against Nugent and CAO, Inc. based on Nugent's breaches of fiduciary duty.

On appeal, Nugent and CAO, Inc. challenge the (1) legal viability of the fiduciary duty breaches identified by the trial court; (2) sufficiency of the evidence supporting fiduciary duty breaches arising from the failures to insure and give notice of the foreclosure sale; (3) sufficiency of the estate's pleadings addressing CAO, Inc.'s liability as Nugent's alter ego; (4) sufficiency of the evidence supporting the trial court's conclusion that CAO, Inc. is liable as Nugent's alter ego; and (5) trial court's damages award.

## BACKGROUND

### I.     Chronology

A chronology of relevant events will set the stage.

- January 3, 2007 — Ellickson signed a real estate sales agreement with CAO, Inc. to sell her Galveston County house to CAO, Inc. for $115,000. Nugent signed on behalf of CAO, Inc. as its president. This agreement expired because the sale to CAO, Inc. did not close by June 1, 2007. The trial court determined that the January 2007 contract "continued to be honored by modification or novation through act and limited documentation . . . ."

- April 27, 2007 — Ellickson signed a special durable power of attorney for real estate transactions to permit Nugent to sell the house. The power of attorney stated that, by accepting the appointment, Nugent agreed to "assume[] the fiduciary and other legal responsibilities of an agent."

3

- January 21, 2008 — Ellickson, acting through Nugent as her attorney-in-fact, signed a warranty deed conveying the house to Womack.

  o Before the January 2008 sale, CAO, Inc. funded and completed repairs on the house to make it "marketable for sale." CAO, Inc. marketed the house and located the buyer.

  o A real estate lien note listed Womack as the maker and the "Property Trust" as payee. At trial, Nugent testified that he is the trustee of the "Property Trust" and his individual retirement account is the trust's beneficiary. The note obligated Womack to pay monthly installments of $2,107.76 over a ten-year period. The note established the following payment schedule: payments 1-4 to the Property Trust; payments 5-60 to Ellickson; and payments 61-120 to the Property Trust. Under this schedule, the Property Trust would receive 65 payments totaling $137,004.40. Ellickson would receive 55 payments totaling $115,926.80.

  o The deed of trust listed Womack as the grantor, the Property Trust as the beneficiary, and Nugent as trustee. The deed of trust obligated Womack to maintain insurance on the house. The deed of trust provided that the Property Trust could direct the trustee to foreclose on the house if the grantor defaulted on the real estate lien note.

- June 9, 2008 — Ellickson died.

- July 24, 2008 — George Yeiter sent an email to Nugent informing him that Yeiter would be the executor of Ellickson's estate. Yeiter requested Nugent's assistance in compiling the estate's inventory.

- August 17, 2008 — Nugent sent an email to Yeiter with details of the January

4

2008 sale to Womack. Nugent stated that Womack "got laid off from his job," had "scrambled to get another job," and had missed one payment on the house. Nugent stated that he told Womack to "just catch it up as soon as he could."

- August 27, 2008 — Yeiter qualified as independent executor of Ellickson's estate.

- September 2008 — Hurricane Ike damaged the house.

- October 5, 2008 — Nugent sent an email to Yeiter asking whether Womack had been sending payments to Yeiter's office.

- January 6, 2009 — The house was sold at a foreclosure sale to Entrust Retirement Services, Inc. for $20,000. The sale proceeds were deposited in an account owned by CAO, Inc. Of these proceeds, $9,440.84 was disbursed to the estate and $10,489.16 was retained by the Property Trust controlled by Nugent. Entrust Retirement Services, Inc. sold the house for $93,000 on March 26, 2009.

- January 30, 2009 — Estate attorney Albert Giddens mailed a letter to Nugent asking about the January 2008 sale to Womack and the house's current condition. Giddens also asked whether Nugent wanted help in foreclosing on the house. By this time, the house already had been sold in a foreclosure sale weeks earlier.

## II.     Trial Court Proceedings

The estate sued Nugent on July 10, 2012, and asserted claims for breach of contract, promissory estoppel, and breach of fiduciary duty.

The estate named Nugent and CAO, Inc. as defendants in its first amended petition. The estate asserted that Nugent acted "as agent for his corporation, CAO, Inc."

The parties proceeded to a bench trial in July 2016. At trial, the evidence and testimony primarily focused on (1) the structure of the real estate transactions at issue; (2) the responsibility to insure the house; and (3) whether Nugent failed to provide notice of the foreclosure sale to the estate. Estate attorney Giddens testified that Nugent never provided notice of the foreclosure sale to the estate. Nugent testified that he informed executor Yeiter of the foreclosure sale before it occurred. Challenging Nugent's credibility, the estate questioned Nugent regarding his 2004 criminal conviction for theft in an amount greater than $200,000, which arose from Nugent's earlier involvement in separate real estate transactions.

In its findings of fact and conclusions of law, the trial court determined that the estate failed to prove its breach of contract and promissory estoppel claims. Addressing the estate's only remaining claim, the trial court concluded that Nugent committed four breaches of fiduciary duty by (1) failing to have Womack's payments under the January 2008 real estate lien note made payable to Ellickson; (2) negotiating for the Property Trust controlled by Nugent to receive $137,004.40 from the house sale while Ellickson was to receive only $115,926.80; (3) failing to make sure the house was insured as required under the deed of trust; and (4) failing to notify the estate of the foreclosure sale, thereby chilling the sale and subjecting the estate to excessive losses.

The trial court also found that Nugent and CAO, Inc. "acted together, their roles and entities being indistinguishable throughout the sale of the proceeds." The trial court concluded that the estate was entitled to recover from Nugent and CAO, Inc. It awarded $163,843.64 in damages to the estate plus pre- and post-judgment interest. The trial court signed its final judgment on August 5, 2016. Nugent and CAO, Inc. timely appealed.

6

Nugent and CAO, Inc. challenge the legal viability of the four fiduciary duty breaches. They assert that two breaches arising from the terms of the January 2008 sale to Womack — payments to a recipient other than Ellickson, and Nugent's negotiation for his trust to receive a disproportionate share of the sale proceeds — are barred by the applicable statute of limitations. They assert that Texas Property Code section 51.0074 bars the two remaining fiduciary duty breaches — failures to maintain insurance and to give notice of the foreclosure sale — because this statute forecloses a fiduciary relationship arising between a trustee and a mortgagee under a deed of trust. *See* Tex. Prop. Code Ann. § 51.0074(b)(2) (Vernon 2014).

Appellants also challenge the legal sufficiency of the evidence underlying the trial court's findings that Nugent breached his fiduciary duty by failing to maintain insurance and failing to notify Ellickson's estate of the foreclosure sale. Relying on Nugent's testimony, Nugent and CAO, Inc. assert that Nugent gave notice of the foreclosure sale to estate executor Yeiter. Appellants contend that, to the extent the trial court discounted Nugent's testimony because of Nugent's prior criminal conviction, the trial court erred because the conviction is inadmissible under Texas Rule of Evidence 609.

The trial court concluded that CAO, Inc. is liable as Nugent's alter ego. Nugent and CAO, Inc. challenge this conclusion and assert that (1) the estate's pleadings failed to give notice of its alter ego liability claim; and (2) the evidence is legally insufficient to support an alter ego finding.

Finally, appellants contest the law and evidence underlying the trial court's damages award.

We address these contentions in turn.

7

**I.**     **Only One of the Fiduciary Duty Breaches Is Legally Viable**

Two of the four fiduciary breaches identified by the trial court arose from the terms of the January 2008 sale to Womack: failing to instruct Womack that payments be made payable to Ellickson, and negotiating for the Property Trust controlled by Nugent to receive a disproportionate share of the house sale proceeds. The two remaining breaches address circumstances that occurred after the January 2008 sale to Womack: failure to maintain insurance on the house and failure to notify the estate of the foreclosure sale.

The statute of limitations forecloses breach of fiduciary duty liability based on (1) directing sales proceeds to a recipient other than Ellickson, and (2) orchestrating a disproportionate distribution of sales proceeds to the trust. The third breach based on the failure to insure the house is foreclosed because the fiduciary duties Nugent assumed under the power of attorney did not encompass procuring insurance. As discussed more fully below, only the fourth breach concerning notification of the foreclosure sale is legally viable based upon the power of attorney.

**A.     The Statute of Limitations Bars Claims Arising from the Terms of the January 2008 Sale**

In its conclusions of law, the trial court stated that "all applicable statute [sic] of limitations were continued by [Ellickson's] death."

The estate contends that Nugent and CAO, Inc. "failed to prove their limitations defense as a matter of law at trial" and "never presented any evidence to prove their defense." Nugent and CAO, Inc. present a multifaceted limitations argument asserting that (1) the estate's breach of fiduciary duty claims arising from the January 2008 sale to Womack are barred by the statute of limitations; (2) because the estate failed to plead or present evidence of tolling, the trial court erred when it

8

concluded that the statute of limitations applicable to the estate's claims was tolled; and (3) the applicable tolling provision would not make the estate's claims timely in any event. We agree with the appellants' limitations arguments.

### 1. Nugent and CAO, Inc. preserved the limitations issue for appeal

Limitations is an affirmative defense that must be specifically pleaded and proved. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 785 (Tex. App.—Houston [14th Dist.] 2016, no pet.). When a party asserts the affirmative defense of limitations in a bench trial, the party must request findings in support of that defense in order to avoid waiving the issue on appeal. *Trelltex, Inc.*, 494 S.W.3d at 785; *Cooper v. Cochran*, 288 S.W.3d 522, 531 (Tex. App.—Dallas 2009, no pet.).

Nugent's and CAO, Inc.'s first amended answer pleaded their affirmative defense of limitations. Nugent and CAO, Inc. reasserted their limitations defense at trial, which was supported by testimony and documentary evidence. Appellants also requested additional findings of fact and conclusions of law with respect to the trial court's ruling on their limitations defense. Finally, at the hearing held on the entry of final judgment, Nugent and CAO, Inc. reasserted their statute of limitations defense and moved for a judgment in their favor. These actions adequately raised and preserved the limitations issue for appeal. *See Woods*, 769 S.W.2d at 517; *Trelltex, Inc.*, 494 S.W.3d at 785; *Cooper*, 288 S.W.3d at 531.

### 2. The estate's claims based on the 2008 sale terms are not timely under the applicable tolling provision

Determining whether a claim is barred by the statute of limitations presents a legal question reviewed *de novo*. *Trelltex, Inc.*, 494 S.W.3d at 787.

A four-year statute of limitations applies to claims asserting breach of

fiduciary duty. Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(5) (Vernon 2002). The statute of limitations begins to run when a claim accrues. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001).

A breach of fiduciary duty claim accrues "when the claimant knows, or in the exercise of ordinary diligence should know, of the wrongful act and resulting injury." *Williard Law Firm, L.P. v. Sewell*, 464 S.W.3d 747, 752 (Tex. App.— Houston [14th Dist.] 2015, no pet.). When a breach of fiduciary duty arises from the terms of a real estate transaction, the claim accrues on the transaction's closing date. *See Dunmore v. Chi. Title Ins. Co.*, 400 S.W.3d 635, 642-43 (Tex. App.— Dallas 2013, no pet.) (plaintiffs' breach of fiduciary duty claim alleged that escrow agent failed to properly describe property conveyed in warranty deed; claim accrued on transaction's closing date).

Applying this principle, fiduciary duty claims arising from the terms of the January 2008 sale to Womack accrued on the transaction's January 21, 2008 closing date. *See Williard Law Firm, L.P.*, 464 S.W.3d at 752; *Dunmore*, 400 S.W.3d at 642-43. The estate filed its original petition on July 10, 2012. Because the estate's fiduciary duty claims arising from the January 2008 sale to Womack were asserted more than four years after they accrued, they are barred by the applicable statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(5).

The trial court concluded that all applicable statutes of limitation were tolled by Ellickson's death. It stated that the estate's fiduciary duty claims "matured within the Statute of Limitations, [and] all applicable statute [sic] of limitations were continued by [Ellickson's] death." These determinations do not save the estate's breach of fiduciary duty claims predicated on the terms of the January 2008 sale.

The estate did not plead, or assert in its filings or at trial, that the statute of limitations applicable to its breach of fiduciary duty claims was tolled for any reason.

10

Similarly, the estate does not assert any arguments on appeal that invoke tolling of the applicable statute of limitations. Instead, the estate asserted only that the accrual date for its fiduciary duty claims was the date of the January 2009 foreclosure sale. We reject this assertion because the operative accrual date for breach of fiduciary duty claims based on the 2008 sale terms is the date of that sale's closing in January 2008 — not the date of the January 2009 foreclosure sale. *See Williard Law Firm, L.P.*, 464 S.W.3d at 752; *Dunmore*, 400 S.W.3d at 642-43.

A party seeking to toll the limitations period must plead and prove its limitations defense. *Woods*, 769 S.W.2d at 518; *Mitchell v. Methodist Hosp.*, 376 S.W.3d 833, 835 n.2 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Because the estate did not raise the issue of tolling in its filings or at trial, the trial court erred by concluding that the limitations period was tolled. *See Woods*, 769 S.W.2d at 518; *Mitchell*, 376 S.W.3d at 835 n.2.

Setting aside the status of the estate's pleadings, the applicable tolling provision would not make these specific breach of fiduciary duty claims timely even if it had been asserted. "The death of a person against whom or in whose favor there may be a cause of action suspends the running of an applicable statute of limitations for 12 months after the death." Tex. Civ. Prac. & Rem. Code Ann. § 16.062(a) (Vernon 2015). But if an executor or administrator qualifies before the expiration of the 12-month period, then the applicable statute of limitations resumes at the time of qualification. *Id*. at § 16.062(b). In this instance, the limitations period is extended only by the number of days that elapsed between the decedent's death and the qualification of the executor or administrator. *See Schiller v. Lewis*, No. 05-07-00209-CV, 2008 WL 3318884, at *2 (Tex. App.—Dallas Aug. 12, 2008, no pet.) (mem. op.).

Ellickson died on June 9, 2008, and Yeiter qualified as executor of her estate

on August 27, 2008.  Under section 16.062, Ellickson's death tolled the applicable statute of limitations for 79 days.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.062; *Schiller*, 2008 WL 3318884, at *2.  The fiduciary duty claims arising from the terms of the January 2008 sale to Womack accrued at closing on January 21, 2008.  At most, therefore, the 79-day tolling period would extend the four-year limitations deadline from January 21, 2012, until April 9, 2012.  The estate's suit, filed in July 2012, falls outside of the extended limitations period with respect to the fiduciary duty claims predicated on the terms of the January 2008 sale to Womack.

## B. The Duty to Maintain Insurance Is Beyond the Scope of Nugent's and Ellickson's Fiduciary Relationship

The existence of a fiduciary relationship does not by itself establish a claim for breach of fiduciary duty.  A plaintiff also must establish that the defendant breached a fiduciary duty arising from that relationship.  *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

The existence of a fiduciary duty presents a question of law for the court. *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 704 (Tex. 2007); *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (per curiam).  Fiduciary duties do "not extend beyond the scope of the fiduciary relationship."  *Home Loan Corp. v. Tex. Am. Title Co.*, 191 S.W.3d 728, 733 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see also Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 159 (Tex. 2004) ("[A] lawyer's fiduciary duties to a client, although extremely important, extend only to dealings within the scope of the underlying relationship of the parties." (internal quotation omitted)).  Courts are instructed to take "all aspects of the [fiduciary] relationship into consideration" when determining "the nature of fiduciary duties flowing between the parties."  *Nat'l Plan Adm'rs, Inc.*, 235 S.W.3d at 700.  Unless otherwise agreed, "'an agent is subject to a duty to his principal to

act solely for the benefit of the principal in all matters connected with his agency.'" *Id.* (quoting *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002)).

The fiduciary relationship between Nugent and Ellickson arose from the April 2007 power of attorney, which permitted Nugent to act on Ellickson's behalf to structure and execute real estate transactions involving her Galveston County house. As the trial court concluded, this fiduciary relationship persisted throughout the real estate transactions at issue in this action. The trial court concluded that "Defendant Nugent had a fiduciary duty to [Ellickson] throughout the transaction, including foreclosure and to ensure [Ellickson's] interests . . . ." Nugent's fiduciary duties therefore were limited by the scope of the fiduciary relationship — a relationship forged to effectuate the completion of real estate transactions. *See Nat'l Plan Adm'rs, Inc.*, 235 S.W.3d at 700; *Home Loan Corp.*, 191 S.W.3d at 733.

Maintaining insurance falls outside the scope of Nugent's and Ellickson's fiduciary relationship. As Nugent and CAO, Inc. point out in their briefing, the duty to maintain insurance on the house arose solely under the deed of trust and was assumed by Womack as grantor under the deed of trust. Nugent did not assume this duty. Because it bears an indirect relationship at best to the overall real estate transaction, this asserted duty falls outside the scope of Nugent's and Ellickson's fiduciary relationship. *See Nat'l Plan Adm'rs, Inc.*, 235 S.W.3d at 700; *Home Loan Corp.*, 191 S.W.3d at 733. Therefore, the failure to insure cannot serve as a basis for Nugent's breach of fiduciary duty liability.

**C.**     **The Duty to Provide Notice of the Foreclosure Sale Falls Within the Scope of Nugent's and Ellickson's Fiduciary Relationship**

In contrast to the other bases upon which the trial court relied, the duty to notify the estate of the foreclosure sale is a legally viable basis for recovery that falls within the scope of Nugent's and Ellickson's fiduciary relationship.

Unlike the duty to maintain insurance, the duty to provide notice of the foreclosure sale relates directly to the real estate transaction as a whole and invokes Nugent's role under the power of attorney to facilitate the sale of Ellickson's house. As Ellickson's agent, Nugent agreed to sell and convey the Galveston County house and to act "solely for the benefit" of Ellickson in the completion of this process. *See Nat'l Plan Adm'rs, Inc.*, 235 S.W.3d at 700. Providing notice to the estate of the foreclosure sale — and thereby providing the estate with the opportunity to bid on or solicit other bidders for the house after the purchaser defaulted — advanced the interests of Ellickson and her estate as they related to the conveyance of the house.

We reject Nugent's and CAO, Inc.'s assertion that the estate's fiduciary duty claim predicated on providing notice of the foreclosure sale is barred by Texas Property Code section 51.0074.[1]

Section 51.0074 provides that a trustee under a deed of trust may not be "held to the obligations of a fiduciary of the mortgagor or mortgagee." Tex. Prop. Code Ann. § 51.0074(b)(2). The Property Code defines "mortgagee" to include a "beneficiary" of a deed of trust. *Id*. at § 51.0001(4)(A) (Vernon 2014). Nugent and CAO, Inc. assert that, because Ellickson was a beneficiary under the deed of trust as a recipient of Womack's payments, Nugent as trustee did not owe a fiduciary duty to notify her estate of the foreclosure sale.

The estate asserts in response that Ellickson was merely a "third party beneficiary" of the transaction involving the deed of trust. A third-party beneficiary, the estate contends, is distinguishable from a named beneficiary and falls outside of section 51.0074's fiduciary relationship proscription. The estate provides no

---

[1] Nugent and CAO, Inc. also assert that section 51.0074 precludes a fiduciary duty to maintain insurance on the house. Because we already have concluded that the duty to maintain insurance falls outside the scope of Nugent's and Ellickson's fiduciary relationship, we do not address appellants' section 51.0074 argument with respect to insurance.

14

authority to support this argument. We need not explore this proffered distinction to resolve the legal issue presented here.

This is so because the existence of a fiduciary relationship between Nugent and Ellickson does not depend solely on Nugent's role as trustee under the deed of trust. The trial court concluded that Nugent owed Ellickson a fiduciary duty "throughout the transaction" that arose "under the Special Durable Power of Attorney, as well as the Real Estate Lien Note and Deed of Trust." The power of attorney stated that "the attorney-in-fact or agent, by accepting or acting under the appointment, assumes the fiduciary and other legal responsibilities of an agent."

It follows that Nugent was not just a trustee in this transaction. Nugent voluntarily took on fiduciary obligations arising from his assumption of the role as Ellickson's agent through an agreement in which he expressly assumed fiduciary duties to her. Section 51.0074 addresses obligations owed ***in the role of trustee***. This statutory provision does not address a situation such as the one presented in this case involving an individual who operates in multiple roles, one of which implicates fiduciary duties explicitly and voluntarily undertaken by a separate contract. *See* Tex. Prop. Code Ann. § 51.0074(b)(2).

We also reject Nugent's and CAO, Inc.'s assertion that a fiduciary duty arising from the power of attorney would not have extended beyond Ellickson's June 2008 death and would not have applied to the January 2009 foreclosure sale. *See* Tex. Est. Code Ann. § 751.131 (Vernon Supp. 2017) ("A durable power of attorney terminates when: (1) the principal dies . . . .").

This court examined a similar issue in *Bigham v. Southeast Texas Environmental, LLC*, 458 S.W.3d 650 (Tex. App.—Houston [14th Dist.] 2015, no pet.), and concluded that fiduciary duties may extend beyond a power of attorney's termination.

15

The plaintiff in *Bigham* asserted a breach of fiduciary duty claim alleging that the defendant — who was granted power of attorney to manage environmental-contamination litigation in exchange for a percentage of the litigation proceeds — sabotaged the litigation. 458 S.W.3d at 655. The defendant argued on appeal that the plaintiff's recovery for breach of fiduciary duty should be limited to conduct occurring before the power of attorney's revocation. *Id*. at 662.

Rejecting the defendant's argument, the court emphasized that the defendant "did not treat the [power of attorney] as revoked" and "maintained that it still gave him the right to control the [contamination] litigation and receive a percentage of all proceeds." *Id*. at 663. Noting that the defendant "was paid as though he still retained rights under the [power of attorney]," the court concluded that "the trial court acted within its discretion by rejecting the notion that [the defendant] could reap the benefits of the [power of attorney] yet avoid the correlating fiduciary duties . . . ." *Id*.

Here, Nugent's failure to notify the estate of the foreclosure sale occurred after Ellickson's power of attorney terminated on her death. Despite the power of attorney's termination, Nugent continued to oversee the real estate transaction with Womack, undertook the foreclosure sale after Womack's default, and received a portion of the proceeds from the foreclosure sale. Like the defendant in *Bigham*, Nugent cannot "reap the benefits of [Ellickson's power of attorney] yet avoid the correlating fiduciary duties." *Id*. The termination of Ellickson's power of attorney did not preclude a fiduciary duty arising from the foreclosure sale. *See id*.

In sum, the duty to notify the estate of the foreclosure sale falls within the scope of Nugent's and Ellickson's fiduciary relationship.

16

**II.      Legally Sufficient Evidence Supports the Finding That Nugent Breached His Fiduciary Duty by Failing to Provide Timely Notice of the Foreclosure Sale**

The trial court found that Nugent did not give the estate notice of the January 6, 2009 foreclosure sale until February 18, 2009.  The trial court concluded that Nugent "had a duty to inform [Ellickson's] estate of the foreclosure sale" and that Nugent "failed to do so."  Nugent and CAO, Inc. assert that the record does not support this conclusion.

Appellants rely on Nugent's testimony that he gave notice of the sale to estate executor Yeiter before it occurred.  Nugent testified that he told Yeiter when the foreclosure was scheduled to occur, and that Yeiter had no objections to Nugent proceeding with the sale.  Yeiter did not testify.  No other evidence corroborates Nugent's testimony on this point.  Nugent and CAO, Inc. assert that Nugent's testimony "conclusively negate[s] the breach element of the Estate's foreclosure-based breach of fiduciary duty claim."

The appellants' legal sufficiency challenge to the breach finding implicates an evidentiary issue, to which we turn first.

To challenge Nugent's credibility as a witness, the estate offered evidence at trial of Nugent's 2004 felony conviction for theft.  Nugent and CAO, Inc. argue on appeal that, "[t]o the extent the trial court discounted or ignored [Nugent's] uncontroverted testimony because of Nugent's prior felony conviction, the trial court abused its discretion in doing so."  Appellants invoke Texas Rule of Evidence 609(b), which states that evidence of a conviction is admissible more than ten years after the conviction only if its probative value substantially outweighs its prejudicial effect.  *See* Tex. R. Evid. 609(b).

Nugent and CAO, Inc. assert that the trial court failed to undertake the

balancing test necessary to authorize admission of evidence of Nugent's 2004 conviction. The estate asserts in response that (1) Nugent and CAO, Inc. did not preserve error on this issue; and (2) the trial court did not err by admitting evidence of Nugent's 2004 felony conviction.

### A. Nugent and CAO, Inc. Preserved Their Evidentiary Contention for Appeal

To preserve an issue for appellate review, a party must (1) make a timely and specific motion or objection; and (2) obtain a ruling, or a refusal to rule, from the trial court. Tex. R. App. P. 33.1; *see also Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 234 (Tex. 2011) ("Error is preserved with regard to a ruling that permits evidence if the opponent of the evidence makes a timely, specific objection and obtains a ruling."). The trial court's ruling does not have to be express; error is preserved as long as "the record indicates in some way that the trial court ruled on the objection either expressly or implicitly." *Dolcefino v. Randolph*, 19 S.W.3d 906, 927 n.16 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (internal quotation omitted).

Nugent and CAO, Inc. timely objected to the introduction of evidence of Nugent's prior conviction. When the estate offered evidence of Nugent's prior conviction at trial, appellants' counsel immediately objected on the grounds that the conviction was "more than ten years old and cannot be used as evidence." The trial court permitted the estate to admit evidence of Nugent's 2004 conviction and to engage in limited questioning of witnesses on this issue. These actions adequately preserved the evidentiary issue for appeal. *See* Tex. R. App. P. 33.1; *Guerra*, 348 S.W.3d at 234; *Dolcefino*, 19 S.W.3d at 927 n.16.

### B. Application of Rule 609(b)'s Balancing Test Need Not be Express

Nugent and CAO, Inc. contend that the trial court failed to undertake the

balancing test prescribed by Rule 609(b).

The record does not show that the trial court expressly undertook a Rule 609(b) balancing test before admitting evidence addressing Nugent's prior conviction. Our research did not find — and the parties did not cite — any Texas civil cases examining whether the trial court must announce affirmatively that it is undertaking a Rule 609(b) balancing test. In the absence of cases addressing this issue in a civil context, we look to criminal cases addressing this issue. Under that case law, the trial court's assessment of the Rule 609(b) balancing test need not be overt. *Chitwood v. State*, 350 S.W.3d 746, 749 (Tex. App.—Amarillo 2011, no pet.); *Bryant v. State*, 997 S.W.2d 673, 676 (Tex. App.—Texarkana 1999, no pet.); *see also Craig v. State*, No. 14-00-01282-CR, 2003 WL 21467209, at *2 (Tex. App.— Houston [14th Dist.] June 26, 2003, no pet.) (mem. op., not designated for publication). The trial court is not required to inform the parties that it undertook the balancing test, describe the factors it weighed, or issue a finding with its admissibility conclusion. *Chitwood*, 350 S.W.3d at 749; *see also Craig*, 2003 WL 21467209, at *2. We apply these principles here.

## C. The Trial Court Did Not Abuse Its Discretion by Admitting Evidence of Nugent's Prior Conviction

The decision to admit or exclude evidence lies within the trial court's sound discretion. *Gurka v. Gurka*, 402 S.W.3d 341, 349 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (appeal from bench trial).

A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or without reference to guiding rules and principles. *Bennett v. Comm'n for Lawyer Discipline*, 489 S.W.3d 58, 72-73 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (appeal from bench trial). When reviewing matters committed to the trial court's discretion, an appellate court "may not substitute its own judgment for that

of the trial court" and "will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling." *Id.* at 73. In a bench trial, we presume that the trial court, in its role as factfinder, disregarded any improperly admitted evidence. *Kenny v. Portfolio Recovery Assocs., LLC*, 464 S.W.3d 29, 32 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Texas Rule of Evidence 609 governs the admission of a criminal conviction in a civil case to attack a witness's character for truthfulness. Tex. R. Evid. 609(a); *see also U.S.A. Precision Machining Co. v. Marshall*, 95 S.W.3d 407, 409 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("[c]onvictions for crimes involving felonies may be admissible in civil cases to impeach a witness's credibility for truthfulness"). If more than ten years have elapsed since the witness's conviction or release from confinement, then evidence of the conviction "is admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Tex. R. Evid. 609(b); *see also Marshall*, 95 S.W.3d at 409.

In *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992), the Court of Criminal Appeals set out a nonexclusive list of factors to be considered by courts when weighing the probative value of a conviction against its prejudicial effect:

1.  The impeachment value of the prior crime;

2.  the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history;

3.  the similarity between the past crime and the offense being prosecuted;

4.  the importance of the witness's testimony; and

5.  the importance of the credibility issue.

These considerations also are germane when the issue arises in a civil case. *See Cortez v. Wyche*, No. 02-11-00364-CV, 2012 WL 1555909, at *4 (Tex. App.—Fort

20

Worth May 3, 2012, no pet.) (analyzing the *Theus* factors to determine the admissibility of a witness's prior criminal conviction in civil action).

The impeachment value of crimes involving deception is greater than that for crimes involving violence. *Theus*, 845 S.W.2d at 881; *Cortez*, 2012 WL 1555909, at *4 ("if the crime involves deception, it has a higher impeachment value"). The second factor favors admission if the past crime is recent. *Theus*, 845 S.W.2d at 881. If the past crime and the conduct at issue in the civil case are similar, the third factor militates against admission. *Cortez*, 2012 WL 1555909, at *4. The fourth and fifth factors are interrelated and, "in a civil case, as the importance of a particular witness's testimony and credibility increases, so does the need to allow impeachment of that witness with evidence of a criminal conviction." *Id.* (internal quotation omitted).

The first, fourth, and fifth factors are dispositive of our *Theus*-factor analysis. Nugent's prior conviction for theft involved an element of deception, which increases the impeachment value of his conviction. *See Theus*, 845 S.W.2d at 881; *Cortez*, 2012 WL 1555909, at *4. Nugent's testimony regarding his conversation with Yeiter was significant because it was the only evidence showing that Nugent satisfied his duty to provide notice to the estate of the foreclosure sale. Because of the testimony's significance, the importance of Nugent's credibility similarly increased. *Cortez*, 2012 WL 1555909, at *4. The length of time that has elapsed since Nugent's conviction and the similarity of the conviction to conduct at issue in the present proceeding do not warrant the conviction's exclusion.

The trial court's admission of evidence and testimony addressing Nugent's prior conviction did not constitute an abuse of its discretion. *See Bennett*, 489 S.W.3d at 72-73; *Gurka*, 402 S.W.3d at 349. Therefore, the trial court acted within its discretion in assessing Nugent's prior felony conviction as part of the record

21

before it to determine whether the evidence supported a finding that Nugent breached his fiduciary duty to Ellickson by failing to notify her estate of the January 2009 foreclosure sale before that sale occurred.

### D. Legally Sufficient Evidence Supports the Finding that Nugent Breached his Fiduciary Duty by Failing to Provide Timely Notice of the Foreclosure Sale

When facts are disputed, the existence of a fiduciary duty breach is a question of fact reserved for the factfinder. *See Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 192 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

Nugent and CAO, Inc. assert that no evidence supports the trial court's finding that Nugent breached the fiduciary duty he owed to Ellickson by failing to notify her estate of the foreclosure sale until after it had occurred. Findings of fact in a nonjury trial "have the same force and dignity as a jury's verdict." *May v. Buck*, 375 S.W.3d 568, 573 (Tex. App.—Dallas 2012, no pet.). A "no evidence" challenge to the trial court's factual findings attacks the legal sufficiency of the evidence underlying the conclusions. *City of Houston v. Cotton*, 171 S.W.3d 541, 546 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). When, as here, a complete reporter's record is filed, the trial court's factual findings may be reviewed for legal sufficiency under the same standards as jury verdict. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam).

Evidence is legally insufficient if (1) there is a complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a valid fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). When examining the legal sufficiency of the evidence, we review the evidence in

the light most favorable to the factual findings and assume that the trial court resolved all conflicts in accordance with its judgment. *Id.* at 820. We credit evidence favorable to the findings if reasonable factfinders could do so and we disregard contrary evidence unless reasonable factfinders could not. *Id.* at 827.

The trial court is the sole judge of the weight and credibility of the evidence and we do not substitute our judgment on these issues for that of the trial court. *Harris Cty. v. Vernagallo*, 181 S.W.3d 17, 24 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). The testimony of an interested witness, though not contradicted, "does no more than raise a fact issue to be determined by the fact finder." *In re Fitzgerald*, 429 S.W.3d 886, 892 (Tex. App.—Tyler 2014, orig. proceeding) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)).

Legally sufficient evidence supports the trial court's finding that Nugent breached his fiduciary duty by failing to give the estate timely notice of the foreclosure sale. Estate attorney Giddens testified that Nugent did not give the estate notice of the foreclosure sale before its occurrence on January 6, 2009. This statement was corroborated by a letter from Giddens to Nugent dated January 30, 2009, in which Giddens stated that he had "not seen anything to suggest that you have initiated [the foreclosure] process" on the house and asked Nugent if he would like assistance in the foreclosure process. This evidence amounts to "more than a mere scintilla" of Nugent's failure to provide notice of the foreclosure sale and is sufficient to support the trial court's finding. *See City of Keller*, 168 S.W.3d at 810.

The evidence and testimony presented at trial did not conclusively establish that Nugent gave the estate notice of the sale. Nugent is an interested witness and his testimony does no more than raise an issue of fact on the question of whether a breach occurred. *See In re Fitzgerald*, 429 S.W.3d at 892. Nugent stated that he informed Yeiter of the sale before its occurrence but the trial court, as the sole judge

23

of Nugent's credibility, was permitted to discount his testimony in light of his prior conviction. *See Vernagallo*, 181 S.W.3d at 24. Evidence of this conviction, as discussed above, properly was admitted. *See City of Keller*, 168 S.W.3d at 810. Regardless whether the conviction was properly admitted, the trial court was charged with resolving all fact disputes and was entitled to credit attorney Giddens's testimony and the corroborating letter over Nugent's interested testimony.

The evidence was legally sufficient to support the trial court's conclusion that Nugent breached his fiduciary duty to Ellickson by failing to notify her estate of the foreclosure sale.

## E.     Conclusion

Of the four fiduciary breaches identified by the trial court, only the breach premised on Nugent's failure to notify the estate of the foreclosure sale presents a legally viable basis for recovery on this record. The asserted breaches arising from the January 2008 sale to Womack are barred by the statute of limitations. The asserted breach arising from the failure to maintain insurance on the house falls outside the scope of Nugent's and Ellickson's fiduciary relationship.[2]

The trial court's finding that Nugent breached his fiduciary duty to Ellickson by failing to notify her estate of the foreclosure sale is supported by legally sufficient evidence. Estate attorney Giddens testified that the estate did not receive notice of the foreclosure sale. This testimony was corroborated by a letter sent to Nugent from Giddens inquiring about the status of foreclosure proceedings. Nugent testified that he informed Yeiter of the sale prior to its occurrence; this testimony did not bind the

---

[2] Nugent and CAO, Inc. also contend that the fiduciary duty findings based on the alleged failure to maintain insurance are not supported by the estate's pleadings. Given our disposition that any duty to maintain insurance fell outside the fiduciary relationship, we need not reach this alternative issue.

trial court as factfinder because the trial court was the sole judge of the weight and credibility of the evidence.

**III.     CAO, Inc.'s Status as Nugent's Alter Ego**

The trial court made the following findings of fact addressing CAO, Inc.'s status as Nugent's alter ego.

- "Buyer Wommack [sic] and [Ellickson] entered into an agreement for Wommack [sic] to purchase the property through Defendants Nugent and CAO, Inc."

- "Defendants Nugent and CAO, Inc. brokered that agreement and negotiated the terms thereof with Wommack [sic]."

- "Defendant Nugent acted at all time [sic] as an individual, as CAO, Inc., Property Trust (Payee and Mortgagee) and attorney in fact (agent of [Ellickson])."

- "Defendant's actions and breaches occurred jointly in each capacity, being inseparable by entity, whether individual or corporate."

The trial court concluded that "Defendants Nugent and CAO, Inc. acted together, their roles and entities being indistinguishable throughout the sale of the proceeds," and that the estate "should recover for breach of fiduciary duty as to Defendant Nugent and defendant CAO, Inc."

Nugent's and CAO, Inc.'s challenge to the finding of alter ego liability against CAO, Inc. is two-fold: (1) the estate never pleaded alter ego liability; and (2) the estate presented no evidence to support its theory of alter ego liability. The estate did not respond to Nugent's and CAO, Inc.'s alter ego arguments on appeal.

We conclude that (1) the estate did not sufficiently plead alter ego liability; (2) Nugent and CAO, Inc. waived the right to challenge the sufficiency of the estate's alter ego pleadings by permitting the development of relevant evidence at

25

trial; and (3) the estate did not present legally sufficient evidence to support a finding of alter ego liability.

### A. Although the Estate Did Not Sufficiently Plead Alter Ego Liability, Nugent and CAO, Inc. Waived the Right to Challenge This Issue

Pleadings are intended to give adverse parties notice of each party's claims and defenses, as well as notice of the relief sought. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896-97 (Tex. 2000); *Herrington v. Sandcastle Condo. Ass'n*, 222 S.W.3d 99, 102 (Tex. App.—Houston [14th Dist.] 2006, no pet.). For purposes of our review, a pleading suffices if it "gives fair and adequate notice of the facts upon which the pleader bases his claim." *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982); *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Issues not raised by the pleadings may be tried by the express or implied consent of the parties. Tex. R. Civ. P. 67. To determine whether the parties tried an unpleaded issue by consent, we examine the record for evidence of trial of the issue. *Moore v. Altra Energy Techs. Inc.*, 321 S.W.3d 727, 734 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). A party's unpleaded issue was tried by consent "when evidence on the issue [was] developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint." *Id*.

Here, the estate's pleadings were not sufficient to apprise Nugent and CAO, Inc. of the estate's claim that CAO, Inc. was vicariously liable as Nugent's alter ego. The estate's first amended petition did not allege that CAO, Inc. functioned as Nugent's alter ego and only pleaded that "Richard Nugent [was] agent for his corporation CAO, Inc."

"Alter ego must be specifically pleaded or it is waived, unless tried by

consent." *In re Kenefick*, No. 14-08-00203-CV, 2008 WL 3833842, at *3 (Tex. App.—Houston [14th Dist.] Aug. 19, 2008, orig. proceeding) (mem. op.). The estate's agency allegations therefore were insufficient to put Nugent and CAO, Inc. on notice of the estate's intent to seek alter ego liability. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex. 1991) (per curiam); *see also Villanueva v. Astroworld, Inc.*, 866 S.W.2d 690, 695 (Tex. App.—Houston [1st Dist.] 1993, writ denied) ("each basis for disregarding the corporate fiction . . . is an independent ground of recovery that must be specifically pleaded or be waived").

Moreover, the concepts of alter ego and agency invoke different legal standards. *Compare Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986) (elements of alter ego) *with Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 & n.2 (Tex. 1998) (elements of various agency theories). The concept of alter ego, as typically applied in the corporate context, collapses the distinction between a corporation and its shareholder or shareholders by treating them as one and the same for liability purposes. *See Castleberry*, 721 S.W.2d at 272; *Dodd v. Savino*, 426 S.W.3d 275, 290 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In contrast, an agency relationship involves two distinct individuals or entities, with one (the agent) acting on behalf of the other (the principal). *Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 60 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Pleading an agency relationship does not afford fair notice of the intent to seek alter ego liability. *See Mapco, Inc.*, 817 S.W.2d at 688; *In re Kenefick*, 2008 WL 3833842, at *3; *Villaneuva*, 866 S.W.2d at 695.

Regardless of any alleged deficiencies in the estate's pleadings, however, Nugent and CAO, Inc. waived their right to complain of the sufficiency of the estate's alter ego allegations. Nugent and CAO, Inc. developed and permitted the development of evidence at trial relevant to the estate's alter ego allegations. Estate

27

attorney Giddens, relying on Texas Franchise Tax Public Information records that had been admitted into evidence, testified that Nugent was "basically the director and [vice-president] and everything else" at CAO, Inc. Nugent testified that he was "the only director, president, and sole owner" of CAO, Inc., and that CAO, Inc.'s sole source of revenue came from real estate transactions. Responding to questioning by his attorney, Nugent testified that he did not use CAO, Inc. to engage in fraud and that CAO, Inc. was "a validly organized and existing corporation" at the time of the January 2008 sale.

The estate's counsel also questioned Nugent regarding CAO, Inc.'s involvement in the real estate transactions at issue. Nugent testified that CAO, Inc. (1) expended money to upgrade the house before the January 2008 sale; (2) marketed the house and worked to find a buyer; and (3) acting with Nugent, entered into a contract to sell the house. This development of evidence relevant to the estate's alter ego claim waived Nugent's and CAO, Inc.'s right to challenge the sufficiency of the estate's alter ego allegations.

Nugent and CAO, Inc. assert that they preserved error on this issue by objecting to alter ego evidence as outside of the estate's pleadings.[3] Although appellants objected to the initial introduction of alter ego evidence, they did not object to additional questions addressing CAO, Inc.'s status as Nugent's alter ego nor did they request a running objection. "The general rule is error in the admission of testimony is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection."

---

[3] Counsel for Nugent and CAO, Inc. objected following estate attorney Giddens's initial discussion of Nugent's role as CAO, Inc.'s director and vice-president. Appellants' counsel asserted that "[t]here are no allegations of alterego [sic] in regards to CAO, Inc." The trial court overruled the objection and permitted evidence and testimony developing facts relevant to the estate's alter ego allegations.

28

*Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004). Because Nugent and CAO, Inc. permitted without objection additional testimony developing facts relevant to the estate's alter ego allegations, they waived their right to complain of this particular deficiency in the estate's pleadings. *See* Tex. R. Civ. P. 67; *Moore*, 321 S.W.3d at 734.

**B.     The Estate Did Not Present Legally Sufficient Evidence to Support the Finding That CAO, Inc. Is Liable as Nugent's Alter Ego**

Nugent and CAO, Inc. assert that the estate "presented no evidence to support each of the elements of an alter ego theory as to Nugent and CAO, Inc."

As discussed in Section II.D., a "no evidence" argument challenges the legal sufficiency of the evidence underlying the trial court's factual findings. *Martinez*, 977 S.W.2d at 334. Evidence is legally insufficient if (1) there is a complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a valid fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

Under Texas law, a corporation is presumed to be a separate entity from its officers and shareholders. *Washington DC Party Shuttle, LLC v. IGuide Tours, LLC*, 406 S.W.3d 723, 738 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc) (citing *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997)). Alter ego liability permits a plaintiff to pierce an entity's "corporate veil" and hold the entity's shareholders, directors, and officers individually liable for the entity's obligations. *Castleberry*, 721 S.W.2d at 271; *see also Dodd*, 426 S.W.3d at 291-92 (defendant, chief executive officer of corporation, held liable for corporation's obligations under alter ego theory of liability). Courts will disregard the corporate fiction "when the corporate form has been used as part of a basically unfair device

29

to achieve an inequitable result." *Castleberry*, 721 S.W.2d at 271. Generally, alter ego will not apply to disregard the corporate form absent exceptional circumstances. *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984).

In this proceeding, the estate seeks to hold CAO, Inc. liable for the tortious actions of its owner and director, Nugent, which implicates a theory of "reverse" corporate veil piercing. *See Wilson v. Davis*, 305 S.W.3d 57, 70 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (plaintiffs sought to hold corporation liable for its shareholder's tortious acts, "which is a theory of outsider reverse corporate veil piercing" (internal quotation omitted)). "[S]imilar equitable principles apply to both direct- and reverse-piercing, such as that the veil will be pierced only when necessary to prevent an injustice and in exceptional circumstances." *Id*. (internal quotation omitted).

Direct and reverse veil piercing are appropriate (1) where a corporation is organized and operated as a mere tool or business conduit of another; and (2) there is such "unity between corporation and individual that the separateness of the corporation has ceased" and holding only the corporation or individual liable would result in injustice. *See Castleberry*, 721 S.W.2d at 271 (citations omitted); *see also SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454-55 (Tex. 2008).

The first element focuses on corporate structure; for this analysis we consider "the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Castleberry*, 721 S.W.2d at 272. An individual's role as an officer, director, or majority shareholder of an entity alone is not sufficient to support a finding of alter ego. *Cappuccitti v. Gulf Indus. Prods.,*

30

*Inc.*, 222 S.W.3d 468, 482 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The corporate structure similarly is not disregarded "merely because of centralized control, mutual purposes, and shared finances." *SSP Partners*, 275 S.W.3d at 455.

The second element examines whether the corporate form was employed for illegitimate purposes such that holding only the corporation or the individual liable would result in an injustice. *Id.* at 454-55. The "injustice" that gives rise to an application of alter ego liability emanates from "the kinds of abuse . . . that the corporate structure should not shield — fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like." *Id.* at 455 (citing *Castleberry*, 721 S.W.2d at 272).

The estate did not present legally sufficient evidence to support the finding that CAO, Inc. is liable as Nugent's alter ego.

Evidence at trial showed that (1) Nugent was director, president, and sole owner of CAO, Inc.; (2) both Nugent and CAO, Inc. were involved in the January 2008 sale to Womack in that both marketed the house, located a buyer, and "entered into [the] contract to sell the property;" and (3) the proceeds received from the house's foreclosure sale were transferred to an account owned by CAO, Inc. before they were dispersed to the estate and to the Property Trust controlled by Nugent.

This evidence does not support the determination that CAO, Inc. is liable for Nugent's breach of fiduciary duty because it was operated as a "mere tool or business conduit" of Nugent. *See Castleberry*, 721 S.W.2d at 271 (citations omitted). Nugent's role as CAO, Inc.'s director, president, and sole owner is insufficient to support a finding of alter ego liability. *See Cappuccitti*, 222 S.W.3d at 482. Similarly, evidence showing that Nugent and CAO, Inc. shared mutual purposes and finances does not warrant piercing CAO, Inc.'s corporate veil. *See SSP Partners*, 275 S.W.3d at 455. This evidence, without further demonstration by the estate

showing that the totality of dealings between Nugent and CAO, Inc. gave rise to a "business conduit" relationship, does not establish the exceptional circumstances necessary to invoke alter ego liability. *See Lucas*, 696 S.W.2d at 374; *Wilson*, 305 S.W.3d at 70.

The evidence at trial similarly does not show that holding only Nugent liable would result in an injustice. *See SSP Partners*, 275 S.W.3d at 455. The estate did not present any evidence showing that Nugent used CAO, Inc. to engage in fraudulent conduct, avoid existing obligations, circumvent statutes, or the like. *See id*. Because no evidence shows that Nugent employed CAO, Inc. for illegitimate purposes, the evidence is legally insufficient to support a finding of alter ego liability. *See id*.

**IV.      Because the Trial Court's Damages Award May Have Been Influenced by the Inclusion of Invalid Theories of Liability, We Reverse and Remand for Further Proceedings**

The trial court awarded $163,843.64 in damages to the estate, plus pre-judgment interest from the date of the foreclosure sale and post-judgment interest as allowed by law.

The trial court arrived at its measure of damages by subtracting the proceeds received by the estate from the foreclosure sale ($9,440.84) and the two payments received by Ellickson from Womack (totaling $4,215.52) from the January 2008 sales price of the house ($177,500). The damages award did not distinguish among the various bases of fiduciary liability found by the trial court, nor was it tied to any particular breach. In their request for additional findings of fact and conclusions of law, Nugent and CAO, Inc. requested that the trial court make additional findings and conclusions "explaining the factual and legal bases for the Court's conclusion . . . that Ellickson's estate suffered damages of $163,843.64." The trial court did not

32

sign additional findings or conclusions addressing its damages award.

Nugent and CAO, Inc. challenge the damages award on appeal and contest its applicability to each of the four fiduciary breach theories identified by the trial court:

1. For the breaches arising from the terms of the January 2008 sale to Womack, Nugent and CAO, Inc. assert that the trial court's measure of damages failed to limit damages to those proximately caused by the fiduciary duty breaches.

2. For the breach arising from the failure to maintain insurance, Nugent and CAO, Inc. assert that there is no evidence of damages proximately caused by Nugent's actions.

3. For the breach arising from the foreclosure sale, Nugent and CAO, Inc. assert that the correct measure of damages is "the difference between the value of the property in question on the date of foreclosure and the remaining balance due on the indebtedness." Appellants claim that there is no evidence to support this measure of damages.

Nugent and CAO, Inc. request that we reverse the trial court's judgment assessing liability and damages and render a take-nothing judgment in their favor. Alternatively, Nugent and CAO, Inc. request that we reverse the trial court's judgment and remand for a new trial on liability and damages. The estate did not address Nugent's and CAO, Inc.'s damages arguments in their briefing.

The trial court awarded cumulative damages premised on multiple bases of liability for breach of fiduciary duty. Some of these bases — as discussed above — do not present legally viable grounds for recovery. We cannot determine the extent to which the trial court's damages award rests on legally invalid bases, nor can we evaluate the substance of Nugent's and CAO, Inc.'s arguments challenging damages premised on the collective bases of liability— some of which are not legally viable.

A judgment may be reversed if the trial court made an error of law that

33

"probably prevented the appellant from properly presenting the case to the court of appeals." Tex. R. App. P. 44.1(a)(2). *Crown Life Insurance Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000), recognizes that one such error occurs when the jury is submitted a broad-form liability question incorporating multiple theories of liability, at least one of which is invalid. *Casteel* is intended to "remedy the trial court's error in failing to eliminate — or at least to segregate — the factfinders' consideration of invalid claims." *Zaidi v. Shah*, 502 S.W.3d 434, 440 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

Similar reasoning has been applied in the context of nonjury trials. *See id*. at 440-41, 444-45 (applying *Casteel*'s reasoning to remedy cumulative damages awarded after a bench trial where award commingled "valid and invalid theories of liability" without "linking any amount of damages to any cause of action"). This type of error requires that a case be reversed and remanded unless we can be reasonably certain that the factfinder — here, the trial court — was not significantly influenced by the inclusion of invalid bases of liability. *Id*. at 444-45; *see also Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 227-28 (Tex. 2005).

We cannot be sure that reliance on invalid bases of liability exerted no significant influence on the trial court's damages award. The elements of the damages award incorporated various parts of the challenged transactions including (1) the sales price at which Womack purchased the house; (2) two payments made pursuant to the schedule established by the real estate lien note; (3) the proceeds received for the house at the foreclosure sale; and (4) Nugent's division of the foreclosure proceeds pursuant to the payment schedule established in the real estate lien note. This recitation shows that there was *some* evidence of damages; but we cannot discern the extent to which the award incorporated invalid bases of liability, nor can we parse through the elements to allocate damages for which Nugent and

34

CAO, Inc. properly may be held liable.

"[W]hen there is some evidence of damages, but not enough to support the full amount, it is inappropriate to render judgment." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 124 (Tex. 2009); *see also Indian Oil Co. v. Bishop Petroleum Inc.*, 406 S.W.3d 644, 660 (Tex. App.— Houston [14th Dist.] 2013, pet. denied). In this situation, we may remand to the trial court for a remittitur or for a new trial. *Indian Oil Co.*, 406 S.W.3d at 660. Given the evidence in this case, remittitur is not appropriate. *See id.* (where damages could not be allocated between amounts for which the defendant was liable and amounts for which he was not, remittitur was not a suitable remedy). Because liability is contested in this case, we cannot order a new trial solely on the issue of unliquidated damages. *See* Tex. R. App. P. 44.1(b). Accordingly, we remand this case on both liability and damages for further proceedings consistent with this opinion. *Id.*; *see also Indian Oil Co., LLC*, 406 S.W.3d at 660.

## CONCLUSION

After reviewing Nugent's and CAO, Inc.'s arguments on appeal, we conclude that (1) of the four fiduciary breaches identified by the trial court, only the breach arising from Nugent's failure to timely notify the estate of the foreclosure sale presents a viable theory of recovery; (2) legally sufficient evidence supports the trial court's finding that Nugent failed to give the estate notice of the foreclosure sale; (3) the estate's pleadings were not sufficient to provide Nugent and CAO, Inc. with notice of the estate's claim that CAO, Inc. was liable as Nugent's alter ego, but Nugent and CAO, Inc. waived the right to assert this challenge by trying the alter ego issue by consent; (4) the trial court's finding that CAO, Inc. was liable as Nugent's alter ego is not supported by legally sufficient evidence; and (5) we cannot determine the extent to which the trial court's damages award rests on invalid bases

35

of recovery.

We reverse the trial court's finding that CAO, Inc. was liable as Nugent's alter ego and render a take nothing judgment in favor of CAO, Inc. We reverse and remand the case on the issues of liability and damages regarding the remaining breach of fiduciary duty claim for further proceedings consistent with this opinion. We affirm the remainder of the judgment.

/s/     William J. Boyce
Justice

Panel consists of Justices Boyce, Donovan, and Jewell.